**OREGON–WASHINGTON R. & NAV. CO. (SOUTHERN PAC. CO. et al., Interveners) v. UNITED STATES (INTERSTATE COMMERCE COMMISSION et al., Interveners).**

No. 9113.

District Court, D. Oregon.

Jan. 29, 1931.

Henry W. Clark, of New York City, J. M. Souby, of Omaha, Neb., and Arthur C. Spencer and Roy F. Shields, both of Portland, Or., for petitioner.

Ben C. Dey, of Portland, Or., Guy V. Shoup, of San Francisco, Cal., and Alfred A. Hampson, of Portland, Or., for intervening plaintiff Southern Pac. Co.

Charles A. Hart, of Portland, Or. (Carey, Hart, Spencer & McCulloch, of Portland, Or., of counsel), for intervening plaintiffs Great Northern Ry. Co., Oregon Trunk Ry., and Oregon Electric Ry. Co.

George Neuner, United States Atty., of Portland, Or.

Daniel W. Knowlton, Chief Counsel, and J. Stanley Payne, Asst. Chief Counsel, both of Washington, D. C., for intervening defendant Interstate Commerce Commission.

I. H. Van Winkle, Atty. Gen., of Oregon, William C. McCulloch, of Portland, Or., and William P. Ellis, of Salem, Or., for intervening defendant Public Service Commission of Oregon.

W. D. Gillis, Atty. Gen. of Idaho, and J. M. Thompson, of Boise, Idaho, for intervening defendant Public Utilities Commission for Idaho.

Before RUDKIN and WILBUR, Circuit Judges, and McNARY, District Judge.

RUDKIN, Circuit Judge.

May 24, 1927, the Public Service Commission of the State of Oregon filed its complaint with the Interstate Commerce Commission against the Oregon-Washington Railroad & Navigation Company, the Union Pacific Railroad Company, and a number of other railroads, alleging that the carriers named as parties to the proceeding had failed and refused to provide reasonable and adequate facilities of transportation by railroad to a large area within the state of Oregon; that such facilities were reasonably required in the interest of public convenience and necessity; that the expense of providing such facilities will not impair the ability of the carriers to perform their duty to the public; and praying for an order requiring some one or more of such carriers to construct a line of railroad between Crane, Or., on the east, and Crescent Lake, or some adjacent point on the line of the Southern Pacific Company, on the west. After full investigation and hearing, the commission made its order requiring the Oregon-Washington Railroad & Navigation Company to extend its line of railroad, now terminating at, or near, Burns, Or., to a connection with the Cascade line of the Southern Pacific Company, at, or near, Crescent Lake, Or., and that the Union Pacific Railroad Company be, and it was thereby, authorized to join in the construction and operation of such extension and to finance it from current funds or by advances. The present proceeding was thereupon instituted in this court by the Oregon-Washington Railroad & Navigation Company, as petitioner, against the United States, as defendant, to set aside, annul, and suspend the order of the commission and to permanently enjoin the government, its officers and agents, from enforcing, or attempting to enforce, the same, and for an interlocutory injunction pending the final hearing.

While many incidental and subsidiary questions are discussed in the able and comprehensive briefs filed by the respective parties, there are but two important and controlling questions in the case: First, the authority of the commission to order a railroad extension such as this under any circumstances; and, second, the sufficiency of the testimony to justify or support the order if authority for the same be found to exist.

The general situation may be briefly summarized as follows: The Union Pacific Railroad Company owns all of the capital stock of the Oregon Short Line Railroad Company, and the Oregon Short Line owns all but fifteen shares of the capital stock of the Oregon-Washington Railroad & Navigation Company. The present line of the Oregon-

Washington Company extends from Portland, Or., to Huntington, Or., where it connects with the Oregon Short Line. The line of the Oregon Short Line extends from Huntington, Or., to Ogden, Utah, where it connects with the line of the Union Pacific Company, which extends from Ogden to Omaha, Neb. These three lines, together with the line of the Los Angeles and Salt Lake Railroad Company, extending from Salt Lake City, Utah, to Los Angeles, Cal., make up the Union Pacific System. In 1916 the Oregon-Washington Company completed a branch line from its main line at Ontario, Or., to Crane, Or., a distance of approximately 127 miles, which has since been operated by the Oregon Short Line under a lease. In 1924 the line in question was further extended to Burns, Or., a distance of about 30 miles. The extension now ordered is from a point at, or near, Crane, Or., to a point at, or near, Crescent Lake, Or., as above stated, a distance of approximately 185 miles, and the estimated cost of the extension is from nine to eleven million dollars.

· There is at present but one east and west line of railroad in Eastern Oregon, extending along the southerly bank of the Columbia river, which forms the northern boundary of the state in part. A vast area in Central and Southeastern Oregon is thus left without reasonable or adequate transportation facilities, and the need for a line of railroad in that vicinity is apparent, assuming, of course, that there will be sufficient traffic along and over the line of the proposed road to justify its construction.

On the latter issue, the parties submitted to the commission elaborate and painstaking estimates of the tonnage available and potentially available for the first five years of operation and thereafter, together with a like estimate of the revenues to be derived from such operation. These estimates were supported by other testimony and differed widely in their results, generally as much as 100 per cent. and often a great deal more. The traffic estimates furnished by the complainant before the commission showed that the gross revenues derived from operation for the first five years would approximate the entire cost of construction. Speaking generally, the commission accepted these estimates and rejected those offered by the railroad companies. We do not now understand that there is any claim that the extension of the line is not reasonably required in the interest of public convenience and necessity,

if the findings of the commission are supported by the testimony. Indeed, if the petitioner shared the optimism of the state and interstate commissions, we think it reasonably safe to say that the present suit would never have been brought, or even contemplated.

The argument of the petitioner is directed largely against the weight of the testimony submitted by the Oregon Commission before the Interstate Commerce Commission and accepted by that body. If we were at liberty to review this testimony independently of the findings made by the commission, we might find no little difficulty in reaching the same conclusion. It might well be urged that the hopes and aspirations of those advocating the extension will never be fully realized; that the local traffic from the sparsely settled desert waste through which the line in large part extends will be much less than estimated, and that the traffic from Southwestern Idaho to California points, and the traffic diverted from the Southern Pacific at the intersection, will fall short of expectations. But we have no such general power of review. If the determination of the commission finds substantial support in the testimony, its findings are conclusive upon the courts, unless the commission has exceeded its power or has proceeded upon an erroneous theory of the law, or unless its action is so manifestly arbitrary and unreasonable as to virtually transcend the authority conferred upon it.

"It is not for courts to weigh the evidence introduced before the Commission * * * or to enquire into the soundness of the reasoning by which its conclusions are reached, * * * or to question the wisdom of regulations which it prescribes. * * *" Assigned Car Cases, 274 U. S. 564, 580, 47 S. Ct. 727, 733, 71 L. Ed. 1204.

"But if the determination of the Commission finds substantial support in the evidence, the courts will not weigh the evidence nor consider the wisdom of the Commission's action." Chicago, R. I. & P. R. Co. v. United States, 274 U. S. 29, 33, 47 S. Ct. 486, 488, 71 L. Ed. 911.

"The finding of reasonableness, like that of undue prejudice, is the determination of a fact by a tribunal 'informed by experience.' * * * This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it." Virginian Ry. v. United States, 272 U. S. 658, 665, 47 S. Ct. 222, 225, 71 L. Ed. 463.

"To consider the weight of the evidence, or the wisdom of the order entered, is beyond our province." New England Divisions Case, 261 U. S. 184, 204, 43 S. Ct. 270, 278, 67 L. Ed. 605.

See, also, United States v. Erie R. Co., 280 U. S. 98, 50 S. Ct. 51, 74 L. Ed. 187; Merchants' Warehouse Co. v. United States (D. C.) 44 F.(2d) 379.

In the light of these decisions, it seems quite manifest that the findings of the commission are not without substantial support in the testimony, and beyond this we are not at liberty to inquire.

Section 1, paragraph 18, added to Interstate Commerce Act by section 402 of the Transportation Act of 1920 (49 USCA § 1(18), provides, among other things, that no carrier by railroad subject to the act shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction or operation, or construction and operation, of such additional or extended line. Paragraph 21 of the same section (49 USCA § 1(21) provides that the commission may, after hearing, in a proceeding upon complaint or upon its own initiative without complaint, authorize or require by order any carrier by railroad subject to the act, party to such proceeding, to provide itself with safe and adequate facilities for performing as a common carrier its car service as that term is used in the act, and to extend its line or lines; provided no such authorization or order shall be made unless the commission finds, as to such extension, that it is reasonably required in the interest of public convenience and necessity, or as to such extension or facilities that the expense involved therein will not impair the ability of the carrier to perform its duty to the public.

In the course of its opinion or decision, the commission stated abstractly that testimony sufficient to warrant or justify a certificate of necessity under paragraph 18 would likewise warrant or justify an order requiring an extension of a line or lines under paragraph 21, and this ruling is assigned as error. The Act of Congress does not attempt to define or prescribe the quantum of proof required in either case, and we need not consider whether the analogy is right or wrong, because, as already stated, the correctness of the reasoning of the commission, or the soundness of its conclusions, are no concern of the courts so long as its findings are supported by substantial competent testimony.

The finding that the expense of the extension will not impair the ability of the petitioner to perform its duty to the public is likewise challenged. If the petitioner is to be considered as a separate entity apart from the Union Pacific System, we do not understand that there is any contention that the cost or expense will not impair its ability to perform its duty to the public. On the other hand, if the commission was warranted or justified in taking into consideration the financial ability of the Union Pacific, we do not understand that there is any contention that the expense of the extension will materially impair the ability of that company to perform its duty to the public. But whether the commission was warranted or justified in taking into consideration the financial ability of the Union Pacific, and in authorizing that company to join in the construction and operation of the extension and to finance it from current funds, or by advances, presents a question of law which we need not consider, in view of our conclusion upon another branch of the case.

A consideration of the facts is not very material, if as a matter of law the Interstate Commerce Commission was without authority to require the carrier to make an extension of its line or lines such as is here involved. But we have deemed a summary of the controlling facts essential in order to comply with the rulings of the Supreme Court in this class of cases. Railroad Commission of Wisconsin v. Maxcy, 281 U. S. 82, 50 S. Ct. 228, 74 L. Ed. 717.

The final question is, then, the authority of the commission to make the order in question under any view of the facts. We have already given the substance of paragraph 21 of the act. The commission is there empowered to authorize or require a carrier by railroad subject to the act to provide itself with safe and adequate facilities for performing as a common carrier its car service, as that term is used in the act, "and to extend its line or lines." The defendant contends that the language, "to extend its line or lines," is too plain to admit of construction; that it was the purpose and policy of the Transportation Act of 1920 to develop and maintain for the people of the United States an adequate railroad system; and that in ordering the extension of a line or lines the only limitations on the authority of the commission

are those found in the act itself, namely, that the extension is reasonably required in the interest of public convenience and necessity and that the expense of the extension will not impair the ability of the carrier to perform its duty to the public.

The petitioner, on the other hand, contends that authority to require the extension of a line or lines is coupled with the authority to require a carrier to provide itself with safe and adequate facilities for performing its car service, as that term is used in the act, and that the only extensions contemplated or authorized were such as would afford adequate transportation facilities to the communities and industries in the territory served by the carrier. The testimony of one of the commissioners before the Committee on Interstate Commerce of the United States Senate lends support to this view. Commissioner Clark there said:

"The thought underlying the second part of this suggestion is that a railroad having been permitted by public franchise, and the powers that go with it, to build into a given territory it should be required to properly serve and develop that territory, and in developed territory it is important to provide for the extension of short branch or spur lines or spur tracks to communities and industries that should be served and that can furnish sufficient traffic to justify such extension. In some States the State officials are authorized to require such extension, but in such cases they are necessarily primarily concerned with, if not confined to, consideration of State traffic. Some of the States have not vested such authority in any State official. Ordinarily, such extension would be desired for the purpose of facilitating, or making possible, the transportation of State traffic. The desirability of uniformity is obvious. The exercise of Federal authority should not depend upon whether a State has acted and should not be different as to a State that has legislated on the subject and a State that has not legislated. It, therefore, seems desirable that Congress should extend its jurisdiction in this regard in a plenary way, and that where such extensions are desired in connection with the movement of presently existing or prospective interstate traffic and the carrier is unwilling to construct them it may, upon proper showing and after full hearing, be required to do so by the Federal tribunal." Hearings before Committee on Interstate Commerce, United States Senate, 65th Congress, 3d Session, on Extension of Tenure of Government Control of Railroads, vol. 1, p. 233.

If such was the purpose of the amendment, it should be so limited by the courts.

"We repeat, the amendment of 1906 was drawn by and recommended by the Commission, and it may be assumed was not intended to have nor given larger import in the law than it had in the recommendation." United States v. Pennsylvania R. R. Co., 242 U. S. 208, 227, 37 S. Ct. 95, 101, 61 L. Ed. 251. While the courts have frequently been called upon to construe the term extension, as employed in paragraph 18 (49 USCA § 1(18), as distinguished from spur, industrial, team, switching, or side tracks, as employed in paragraph 22 (49 USCA § 1(22), our attention has not been directed to any decision defining or deciding how far a line or lines may be extended within the purview of the extension provisions of the act. In Lancaster v. Gulf, C. & S. F. Ry. Co. (D. C.) 298 F. 488, 490, it was said:

"The terms 'extension of line of railroad' and 'industrial track' have no clear and established restrictive definition, either in dictionaries or in railroad practice, which will permit of the case being settled by rule of thumb, but, on the contrary, these terms have a wide latitude of meaning, according to the context in which they are used. Since Congress has not undertaken to define the words used, and since it is plain that they may be, according to the angle of approach, given wide and varied meaning, it is evident that the purpose of the act must be drawn from its entire structure, and that purpose, together with the context in which the words are used, must at the last be the guide to the interpretation of the words at issue."

People of State of New York ex rel. New York & Queens Gas Co. v. McCall, 245 U. S. 345, 38 S. Ct. 122, 62 L. Ed. 337, and New York ex rel. v. Public Service Comm., 269 U. S. 244, 46 S. Ct. 83, 70 L. Ed. 255, are cited in support of the order; but these cases involved orders directing the extension of gas mains, and have little application here. Gas, water, electric current, and telephone service must in the nature of things be brought to the consumer, but this is true of railroads to a limited extent only. Furthermore, the orders complained of in these cases simply required the gas companies to extend their facilities to consumers within the territory which the companies undertook, and were obligated, to serve. Many other cases might be cited, but the orders under consid-

eration were of minor importance when compared with the order in this case. Wisconsin, etc., Co. v. Jacobson, 179 U. S. 287, 21 S. Ct. 115, 45 L. Ed. 194, involved an order of the Railroad and Warehouse Commission of the State of Minnesota requiring two railroad companies whose tracks intersected at a certain point to provide connecting tracks so that the cars of each company could be run onto the tracks of the other; Minneapolis, etc., R. R. v. Minnesota, 193 U. S. 53, 24 S. Ct. 396, 48 L. Ed. 614, involved an order of the same commission requiring a railroad company to build and maintain a station house at a certain point on its line; Atlantic Coast Line R. Co. v. N. Car Corp. Comm., 206 U. S. 1, 27 S. Ct. 585, 51 L. Ed. 933, 11 Ann. Cas. 398, involved an order requiring a railroad company to rearrange its schedules so as to make a convenient connection between its trains and those of another road passing a junction point; Missouri Pacific R. R. Co. v. Kansas, 216 U. S. 262, 30 S. Ct. 330, 54 L. Ed. 472, involved an order requiring a railroad company to put into operation on one of its branches a passenger train in the place of a mixed passenger and freight train; Grand Trunk R. Co. v. Michigan R. R. Commission, 231 U. S. 457, 34 S. Ct. 152, 58 L. Ed. 310, involved an order requiring various railroads to use their tracks in the city of Detroit for interchange of traffic; Chicago, Milwaukee & St. Paul Ry. Co. v. Iowa, 233 U. S. 334, 34 S. Ct. 592, 58 L. Ed. 988, involved an order requiring a railroad company to accept shipments of coal in carload lots when tendered in the cars of other railroad companies; Phoenix Ry. Co. v. Geary, 239 U. S. 277, 36 S. Ct. 45, 46, 60 L. Ed. 287, involved an order directing a street railroad company to double track its line for a distance of ten blocks. In the latter case, the court added, however: "Complainant is not required to open up new territory, but only to give better service upon a street already occupied by it under a public franchise."

On the other hand, in Atchison, T. & S. F. Ry. Co. v. Railroad Commission, 173 Cal. 577, 160 P. 828, 830, 2 A. L. R. 975, the Supreme Court of California, in an able and well-considered opinion, annulled an order of the Railroad Commission of that state requiring a railroad company to construct a branch line twelve miles in length, holding that it constituted a taking of property without compensation and without due process of law. The court said:

"The issue to be determined is this: Has the Railroad Commission authority to require a railroad company to extend its line of railroad, or to build a new line, so as to connect with its existing line points that have not theretofore been connected and which the company has not undertaken to so connect? * * * The solution of the problem thus presented must be found in a definition of the character of the order complained of. Is the Railroad Commission, in ordering the construction of a railroad line, regulating the service which the petitioner has undertaken to give to the public, or is it compelling the railroad company to dedicate its property to a new service? If the former, the commission is acting within its jurisdiction; if the latter, it is attempting to exercise an authority which the statute either has not attempted or is unable to confer upon it. * * * A public utility, undertaking to supply a given public need, submits itself to the regulation and control of public authority with respect to the service which it has thus undertaken. Thus, a water company having a franchise to supply water to the inhabitants of a given city assumes the public duty of supplying that community with water. It may be compelled to extend its mains in order to furnish the service to such inhabitants. * * * So of companies furnishing gas, electric current or telephone service. 1 Wyman on Pub. Ser. Corp. § 797. But to require a public utility to devote its property to a service which it has never professed to render is to take that property, pro tanto, and such taking cannot be justified except under the power of eminent domain—i. e., upon just compensation. A railroad company, in constructing a line between given points, does not undertake to supply the transportation needs of any territory not reached by its lines. 1 Wyman, Pub. Ser. Corp. § 272."

And, after quoting from Great Northern Ry. v. Minnesota, 238 U. S. 340, 35 S. Ct. 753, 59 L. Ed. 1337, and Chicago, Mil. & St. P. R. R. Co. v. Wisconsin, 238 U. S. 491, 35 S. Ct. 869, 59 L. Ed. 1423, L. R. A. 1916A, 1133, the opinion concluded:

"These quotations point to the essential ground of the invalidity of the order here in question. The supervision of service rendered by a railroad company is a proper matter for public regulation and control. The question whether a railroad company shall extend its lines to points not theretofore reached by it, whether, in other words, it shall engage in a new and additional enterprise, is one of policy to be determined by its directors. To compel a railroad com-

pany to apply its property to the construction and operation of a line of railroad which it does not desire to construct or operate is to take its property.

"As we have already indicated, we are cited to no authority which supports the power of the state, acting through its railroad commission, or otherwise, to compel the extension of a railroad line in the manner here attempted. On the contrary, such decisions as have come to our attention tend, rather, to deny the existence of any such power."

See, also, Southern Bell Tel. & Tel. Co. v. Town of Calhoun (D. C.) 287 F. 381; Towers v. United Rys. & Electric Co., 126 Md. 478, 95 A. 170; State v. Public Service Commission, 270 Mo. 429, 192 S. W. 958, 198 S. W. 872.

The views of the California Supreme Court as there expressed find support in many decisions of the Supreme Court of the United States. Thus, in Atlantic Coast Line R. Co. v. N. Car. Corp. Comm., supra, at page 20 of 206 U. S., 27 S. Ct. 585, 592, the court said:

"As the public power to regulate railways and the private right of ownership of such property coexist and do not the one destroy the other, it has been settled that the right of ownership of railway property, like other property rights, finds protection in constitutional guarantees, and, therefore, wherever the power of regulation is exerted in such an arbitrary and unreasonable way as to cause it to be in effect not a regulation, but an infringement upon the right of ownership, such an exertion of power is void because repugnant to the due process and equal protection clauses of the 14th Amendment."

And in Northern Pac. Ry. v. North Dakota, 236 U. S. 585, 595, 35 S. Ct. 429, 433, 59 L. Ed. 735, L. R. A. 1917F, 1148, Ann. Cas. 1916A, 1, the present Chief Justice said:

"But, broad as is the power of regulation, the state does not enjoy the freedom of an owner. The fact that the property is devoted to a public use on certain terms does not justify the requirement that it shall be devoted to other public purposes, or to the same use on other terms, or the imposition of restrictions that are not reasonably concerned with the proper conduct of the business according to the undertaking which the carrier has expressly or impliedly assumed. If it has held itself out as a carrier of passengers only, it cannot be compelled to carry freight.

As a carrier for hire, it cannot be required to carry persons or goods gratuitously. The case would not be altered by the assertion that the public interest demanded such carriage. The public interest cannot be invoked as a justification for demands which pass the limits of reasonable protection, and seek to impose upon the carrier and its property burdens that are not incident to its engagement."

Application of these principles to the case at bar can lead to but one conclusion. One of the dominant purposes of the order complained of was to require the petitioner to construct a line of railroad 185 miles in length in order that lumber traffic originating perhaps hundreds of miles from its present lines might find a shorter route to eastern markets, and that traffic from southwestern Idaho might find a shorter route to northern California points. Thus, the carrier was plainly required to devote its property to a service which it has never professed to render and to a service entirely beyond the scope of the undertaking which it has expressly or impliedly assumed.

■ In this connection, our attention has been directed to the fact that the articles of incorporation of the petitioner, as they existed at the time the complaint before the commission was filed, authorized it to purchase, acquire, own, hold, construct, complete, equip, maintain, and operate certain railroads, including "that part of the railroad and telegraph lines projected and proposed to be constructed by the Oregon Eastern Railway Company consisting of: (a) a line from Vale across the State of Oregon to a point at or near Odell in said state." Provisions of this kind in articles of incorporation are usually permissive, not contractual, and such is the case here. Towers v. United Rys. & Electric Co., supra. Indeed, if the provision was contractual it is not easy to understand how it could be enforced by the Interstate Commerce Commission.

■ Our conclusion is, then, that the provision of the Transportation Act of 1920 authorizing the Interstate Commerce Commission to require carriers to extend their line or lines is unconstitutional and void if it must be construed broadly and liberally, as was done by the commission in the present case. But we do not think that such construction is either necessary or permissible. If a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of

which such questions are avoided, it is the duty of the courts to adopt the latter. United States ex rel. Atty. Gen. v. Delaware & Hudson Co., 213 U. S. 366, 407, 29 S. Ct. 527, 53 L. Ed. 836; Texas v. Eastern Texas R. R. Co., 258 U. S. 204, 217, 42 S. Ct. 281, 66 L. Ed. 566. The extension provision of the Transportation Act may therefore well be limited to such extensions as are reasonably necessary to reach communities and industries in the territory which the carrier has professed to serve or according to the undertaking which it has expressly or impliedly assumed. Such a construction will give full effect to the purpose of Congress and make the act conform to the practice then prevailing in many of the states. When the act is thus construed, the order in question exceeds the authority of the commission and is void. Its enforcement must therefore be enjoined; and a decree will be entered accordingly.