**McLEAN TRUCKING CO., Inc., v. UNITED STATES et al.**

District Court, S. D. New York.

Dec. 8, 1942.

Davies, Auerbach, Cornell & Hardy, of New York City (E. B. Ussery, of Washington, D. C., Orrin G. Judd, of New York City, and Charles V. Guthrie, of Washington, D. C., of counsel), for plaintiff.

Thurman Arnold, Asst. Atty. Gen., Arne C. Wiprud, William R. Kueffner, and Charles S. Collier, Sp. Assts. to the Atty. Gen., John H. D. Wigger and David L. Macdonald, Sp. Attys., both of Washington, D. C., and Mathias F. Correa, U. S. Atty., of New York City, for United States.

Daniel W. Knowlton, of Washington, D. C., for Interstate Commerce Commission.

Ralph F. Koebel, of Washington, D. C., for Secretary of Agriculture.

Kirkpatrick, Mathias & Meloy, of Chicago, Ill., for American Farm Bureau Federation.

Nordlinger, Riegelman, Cooper & Benetar, of New York City (Mortimer A. Sullivan, of Buffalo, N. Y., of counsel), for defendants.

Before CHASE, Circuit Judge, and WOOLSEY and MANDELBAUM, District Judges.

CHASE, Circuit Judge.

This action was brought by the plaintiff, a common carrier by motor vehicle within part of the territory in which the defendant motor carriers, or some of them, operate, against the United States of America and the Interstate Commerce Commission, Associated Transport, Inc., Arrow Carrier Corporation, Barnwell Brothers Incorporated, Consolidated Motor Lines Incorporated, Horton Motor Lines Incorporated, McCarthy Freight System, Inc., M. Moran Transportation Lines, Inc., Southeastern Motor Lines Incorporated,

Transportation Incorporated, the Transport Company, Kuhn Loeb & Company, Barnwell Warehouse & Brokerage Company, Brown Equipment & Manufacturing Company, Conger Realty Company, and Southern New England Terminals, Inc., under the Urgent Deficiencies Act (38 Stat. 219, 220; 28 U.S.C.A. §§ 45 and 47a) to enjoin and set aside an order of the Interstate Commerce Commission which authorized the merger of the defendants who are carriers by motor vehicle and the issuance of securities in connection therewith. It was heard by a court of three judges pursuant to the statute. 28 U.S.C.A. § 47.

The principal issues are (1) whether the findings of the Commission are supported by the evidence and (2) if so, whether the Commission's order was erroneous because it resolved the questions presented by the standard of what it determined was adequate transportation facilities in the public interest under the criteria prescribed in the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., without deciding that its order would not result in a consolidation that would violate the provisions of either the Sherman, 15 U.S.C.A. §§ 1–7, 15 note, or the Clayton, Act, 38 Stat. 730, as those acts have been construed generally.

The proceedings before the Commission were instituted by Associated Transport, Inc., a Delaware corporation which was organized for the purpose of bringing about the proposed merger and which was not then engaged in the transportation business. The carriers by motor vehicle it was proposed to merge operated as common carriers on regular routes and one or more of them served communities in Massachusetts, Rhode Island, Connecticut, New York, Pennsylvania, Ohio, New Jersey, Delaware, Maryland, the District of Columbia, Virginia, North Carolina, South Carolina, Georgia, Florida, Alabama, Tennessee and Louisiana.

There were two petitions which were consolidated for hearing. The first was by Associated Transport, Inc., for authority under Sec. 5 of the Interstate Commerce Act, 49 U.S.C.A. § 5, (1) to obtain control through the purchase of their capital stock of the following eight common carriers by motor vehicle: Arrow Carrier Corporation, Paterson, N. J., Barnwell Brothers Incorporated, Burlington, N. C., Consolidated Motor Lines Incorporated, Hartford, Conn., Horton Motor Lines Incorporated, Charlotte, N. C., McCarthy Freight System, Inc., Taunton, Mass., M. Moran Transportation Lines, Inc., Buffalo, N. Y., Southeastern Motor Lines Incorporated, Bristol, Va., and Transportation Incorporated, Atlanta, Ga., and (2) to consolidate into a unit for operation by itself the properties and rights to operate of the named carriers within one year from the date it should acquire the control of them. The second application was for authority to issue preferred and common stock to obtain funds needed to acquire the control of the named carriers, and four associated noncarriers, viz., Barnwell Warehouse & Brokerage Company, Burlington, N. C., Brown Equipment & Manufacturing Company, Charlotte, N. C., Conger Realty Company, Charlotte, N. C., and Southern New England Terminals, Inc., Taunton, Mass.

The Antitrust Division of the Department of Justice, the Secretary of Agriculture, four fruit growers associations and Super Service Freight Company, a common carrier by motor vehicle, intervened and opposed the applications. There were other intervenors who, however, stood indifferent except the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America which at the close of the hearings supported the applications.

A previous application by another petitioner for authority to unify, by means of a holding company set-up, twenty-nine common carriers by motor vehicle which included the eight already named had been denied and these applications were the result of the desire of the petitioner and the eight operators involved to avoid the defects in the first application which had led to its denial largely on the ground that the then proposed unification was not economical in that it would permit two or more carriers under common control to engage in duplication of service over most of the routes in the greater part of the territory affected.

In the instant proceedings there were extensive hearings before an examiner at which a large amount of evidence was introduced. After his proposed report was duly served on the parties, the intervenors who opposed the applications filed objections which were argued before the Commission which after due consideration made the order now under attack.

The Commission made findings on what the record shows was adequate sup-

porting evidence that the proposed consolidation would bring about economies and greater efficiency in operation; improvement in service; leave ample competitive motor vehicle carrier service in the territory affected; and be in the public interest within Sec. 5 of the Interstate Commerce Act.

After the suit was brought and the answer of the Commission was filed it was amended to allege, what is now undisputed, that because of the failure to carry through negotiations for the acquisition of the stock of the Arrow Carrier Corporation the applicant petitioned the Commission for a modification of its order to exclude that carrier from the merger authorized and that was done by order entered June 8, 1942. All phases of this controversy which resulted from the inclusion of Arrow in the authorized consolidation are, therefore, eliminated and we will proceed as though Arrow had never been a party.

■ The United States answered by confessing error and praying for a decree setting aside the Commission's order. The other defendants answered joining issue and praying that the complaint be dismissed. Their right so to do was not affected by the confession of error by the United States and the issues thus raised are still open. 28 U.S.C.A., § 45a; Interstate Commerce Commission v. Oregon-Washington R. Co., 288 U.S. 14, 53 S.Ct. 266, 77 L.Ed. 588.

■ As we have found that the evidence was sufficient to support the findings of the Commission our further review must be confined to determining whether the order is in conformity to the applicable law. Virginian Ry. Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463; Assigned Car Cases, 274 U.S. 564, 47 S.Ct. 727, 71 L.Ed. 1204; Oregon-Washington R. & Nav. Co. v. United States, D. C., 47 F.2d 250. It follows, of course, that the remaining question is whether the findings provide adequate support for the order even though they do not negative the possibility that the merger will not be in accord with all the provisions of the antitrust statutes as they have been construed.

■ Considerable light will be thrown on this problem at once by noticing the plain fact that while the Antitrust Acts and the Interstate Commerce Act are designed to bring about the conduct of business for the common good the former are also penal and are aimed at the evils of monopolies as such which unreasonably restrain trade or business while the latter, though it does not disregard such evils, is primarily concerned with creation and maintenance of adequate transportation service to the public. Providing such adequate service comes, of course, within the realm of trade or business and it is self-evident that the consolidation of the instrumentalities by which it is accomplished may create monopolies and consequent restraints which would be unreasonable, and therefore unlawful, if the antitrust laws are given paramount effect in every instance. We think it equally obvious that there may at times be at least an apparent conflict in the administration of these statutes. What will best serve the public interest by way of adequate transportation facilities may not leave the business so free from restraint due to monopoly that it can justly be said that such restraint would be unreasonable were elimination of that the primary objective. It may be that reasonableness is a term sufficiently elastic, since it is dependent upon all the relevant circumstances in each instance, that the proper satisfaction of the need for adequate public transportation service would in and of itself prevent what incidental restraint of trade flowed from it from being unreasonable. We need not so decide now on broad principles, however, for we think Congress has made it plain in sec. 5(8) of the Interstate Commerce Act, 49 U.S.C.A. § 5(8), that it recognized the inherent possibility that orders by the Commission made within its powers and in discharge of its duty to further the creation and maintenance of transportation facilities in the public interest under the Act might not always be outside the field of restraints made unlawful by the antitrust statutes as construed in respect to restraint of commerce per se.

Section 5 of Title 49 U.S.C.A. provides that:

"The carriers affected by any order made under the foregoing provisions of this section and any corporation organized to effect a consolidation approved and authorized in such order are relieved from the operation of the 'antitrust laws,' as designated in section 12 of Title 15, Commerce and Trade, and of all other restraints or prohibitions by law, State or Federal, in so far as may be necessary to enable them to do anything authorized or required by any

order made under and pursuant to the foregoing provisions of this section."

■ The import of this is that the Commission when acting with due regard for the public interest, which certainly requires it when passing upon proposed consolidations of carriers to give adequate consideration to such features as the maintenance of desirable competition and avoidance of hampering restraints, may, and should, be guided by the scope and purpose of the Interstate Commerce Act and that if, as it has in this instance, it has properly interpreted that statute and applied it correctly to the facts proved and found its order is valid. The provision that those who act in reliance upon and in conformity to such an order are not subject to the provisions of the antitrust laws designated or to "other restraints or prohibitions by law" makes that conclusion inescapable.

■ That the Commission had the authority under the Interstate Commerce Act to enter the order it made on adequate evidence and in furtherance of the public interest cannot be doubted. Public interest is a proper standard in that it embraces in respect to public transportation service what is adequate, economical, efficient, necessary and therefore appropriate to serve the public need. New York Central Securities Corp. v. United States, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138. Such changes in the Transportation Act of 1920 as were brought about by the Emergency Railroad Transportation Act of 1933, 49 U.S.C.A. §§ 5, 5a, 15a, 15b, 19a, 250–267, kept this standard of action fully applicable. State of Texas v. United States, 292 U.S. 522, 54 S.Ct. 819, 78 L.Ed. 1402. The Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq., and the Transportation Act of 1940, 54 Stat. 898, applied like principles to the regulation of common carriers by motor vehicle.

■ What is needed for adequate service is a matter for the Commission to decide and it is likewise free to decide what amount of competition is in furtherance of the public interest and what is not. It is not bound to preserve or foster competition to a degree that will not best serve the public interest from the standpoint of adequate public transportation service and whether competition as such is adequate or not must depend upon its effect in furtherance of the attainment of the ends Congress sought to accomplish under the Interstate Commerce Act administered by the Commission.

■ Nor does the fact that after this consolidation there will be no other one carrier by motor vehicle in competition with the applicant throughout the whole territory it serves prevent the making of the order. That is of course a factor to be considered, as it was, by the Commission in determining what is in the public interest just as are all the other pertinent factors and is to be given such weight in its final decision as the Commission, in its informed judgment and with due regard for all the evidence decides it should have. We cannot review the weight of the evidence or the wisdom of the order. New England Divisions Case (Akron, C. & Y. R. Co. v. United States), 261 U.S. 184, 204, 43 S.Ct. 270, 67 L.Ed. 605.

■ The order authorizing the issuance of securities required to finance the consolidation was also based on adequate findings amply supported by the evidence, It follows that that order is likewise to be given effect.

Injunction denied and complaint dismissed.