CRICHTON et al. v. UNITED STATES et al.

District Court, S. D. New York.
Aug. 25, 1944.

Edgar Turlington, of Washington, D. C. (Neilson Olcott and Olcott, Havens, Wandless & Stitt, all of New York City, and James E. Wilson and Roberts & McInnis, all of Washington, D. C., on the brief), for plaintiffs.

Edward Dumbauld, Sp. Asst. to Atty. Gen. (James B. M. McNally, U. S. Atty., and William L. Lynch, Asst. U. S. Atty., both of New York City, Wendell Berge, Asst. Atty. Gen., and Robert L. Pierce, Sp. Asst. to Atty. Gen., on the brief), for defendant United States.

Edward M. Reidy, Asst. Chief Counsel, Interstate Commerce Commission, of Washington, D. C. (Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, of Washington, D. C., on the brief), for defendant Interstate Commerce Commission.

Mortimer Allen Sullivan, of Buffalo, N. Y., for intervening defendants Associated Transport, Inc., and Southeastern Motor Lines, Inc.

Before CLARK, Circuit Judge, and COXE and CONGER, District Judges.

CLARK, Circuit Judge.

Plaintiffs, as competitors of Associated Transport, Inc., a motor truck line, bring this action under 28 U.S.C.A. §§ 41(28), 43–48, and 49 U.S.C.A. § 305(g), to set aside an order of the Interstate Commerce Commission, dated November 2, 1943, which granted Associated the certificate of public convenience and necessity required by Part II of the Interstate Commerce Act, formerly the Motor Carrier Act, 1935, §§ 206(a), 207(a), 49 U.S.C.A. §§ 306(a), 307(a), to enable it to act as a common carrier of property by motor vehicle in interstate commerce over regular routes between Nashville and Knoxville, Tennessee. Associated is the eventual successor in interest to three brothers Jacobs, copartners doing business as Jacobs Motor Service, who in January, 1935, applied to the Railroad and Public Utilities Commission of Tennessee for a permit to operate as a common carrier by motor vehicle in interstate commerce between Nashville and the Tennessee-Virginia state line at Bristol, Tennessee. Although the Tennessee Commission denied this application on March 27, 1935, the Jacobs nevertheless commenced trucking operations between Nashville and New York City in April of the same year. In June, 1935, one of the brothers was arrested for lack of a Tennessee permit; but the state commission reconsidered its previous decision by granting the requested permit in July, 1935, and service to New York hence continued. On February 11, 1936, the Jacobs made application to the Interstate Commerce Commission under the "grandfather" clause of § 206(a) of the then new Motor Carrier Act, 1935, for a certificate of public convenience and necessity as a common carrier by motor vehicle between Nashville and New York City. They made no trips after February 17, 1936, however, and the following month sold all their operating rights to Hoover Lines, Inc.

Although Hoover requested and received from the Tennessee Commission in March, 1936, approval of its purchase of the Jacobs' state operating rights, it delayed in making application to the I.C.C. for approval of the purchase, as required by § 213 of the Act, 49 Stat. 555, 49 U.S.C.A. § 313, until June, 1936. Meanwhile no operations took place over the line. On June 11, 1937, the I.C.C. approved the pur-

chase, but noted in its report that Hoover had upon oral argument abandoned any claim to the Jacobs' "grandfather" rights between Knoxville and New York because of other pending applications covering that much of the route. Hoover Lines, Inc.— Purchase—Jacobs, 5 M.C.C. 97. Shortly thereafter, Hoover recommenced operations. On December 2, 1937, the I.C.C., in consideration of Hoover's previous abandonment of any claims from Knoxville to New York, restricted the original Jacobs "grandfather" application to operations between Nashville and Knoxville, and, pursuant to the mandate of § 205(a) of the Act regarding applications which involve operations in "not more than three States," referred the thus delimited application for hearing before a joint board.

Early in 1938, Hoover became bankrupt and sold its operating rights to Southeastern Motor Lines, Inc., which appeared at the hearing on the "grandfather" application before Joint Board 107 in Nashville in May, 1938. On June 29, 1938, the Joint Board recommended denial of the application. Then on July 16, 1938, Southeastern applied[1] to the I.C.C. for a certificate of public convenience and necessity as a common carrier between Nashville and New York under § 207(a) of the Act. Two months later, the Commission set aside its order of December 2, 1937, which restricted the original "grandfather" application to operations between Nashville and Knoxville, and set down for hearing before an examiner in Nashville the two applications, under the "grandfather" clause and under § 207(a), for operating rights between Nashville and New York. At this hearing Southeastern, in addition to portraying the background set forth above, showed that it was the owner of some forty vehicles, and that it operated an extensive daily service of from one to three tractor-trailer units between Nashville and New York. Southeastern's shipping lists bore witness to the volume and scope of this service, while numerous satisfied shippers testified to its efficiency and expressed the opinion that there was a definite need that it be continued. Other carriers introduced similar evidence as to their respective services, and it appeared that there were a number of substantial motor carriers offering trucking accommodations between Nashville and New York very similar to Southeastern's.

After considering the evidence for almost a year, the trial examiner denied both of Southeastern's applications by report and order of March 12, 1940. While review of this decision was pending before Division V of the I.C.C. early in 1942, the full Commission approved the acquisition by Associated of control over Southeastern and other carriers, Associated Transport, Inc.— Control and Consolidation, 38 M.C.C. 137, a statutory district court refused to interfere, McLean Trucking Co. v. United States, D.C.S.D.N.Y., 48 F.Supp. 933, and the Supreme Court affirmed in a lengthy opinion, 321 U.S. 67, 71, 64 S.Ct. 370, 373, which pointed out, inter alia, that as a result of the merger Associated "will be the largest single motor carrier in the United States." Hence Associated was substituted for Southeastern as applicant. Division V affirmed the holding of the examiner on December 30, 1942, one commissioner dissenting. 41 M.C.C. 671. Upon application for reconsideration, the full Commission on November 2, 1943, with four commissioners dissenting, reversed this determination in part and granted the § 207(a) application in so far as it related to operations between Nashville and Knoxville. 43 M.C.C. 37. The denial of the "grandfather" application remained undisturbed, since the Commission deemed the cessation of operations by the Jacobs and Hoover between February, 1936, and July, 1937, not to have been an interruption of service "over which the applicant or its predecessor in interest had no control" within the meaning of the statute; while the § 207(a) application was granted only as to operations between Nashville and Knoxville because Southeastern had already received permission in a separate proceeding for operations between Knoxville and New York. It is against this order that the plaintiffs bring the present action. Associated and Southeastern have joined as intervening defendants with the permission of the court.

Section 206(a) of the present Part II of the Interstate Commerce Act provides that "no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, * * *

---

[1] Making, in form, two applications with two docket numbers, of 43 M.C.C. 37, which are treated herein as a unit.

unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations." Then follows the so-called "grandfather" clause or proviso which requires the Commission to issue a certificate upon no further showing than that the applicant was "in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, * * * except * * * as to interruptions of service over which the applicant or its predecessor in interest had no control," provided application was made to the Commission for a certificate within 120 days after October 1, 1935.

Section 207(a) orders the issuance of a certificate of public convenience and necessity "to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity." Section 205 meanwhile prescribes the administrative procedure to be followed by the Commission. By the terms of § 205(a): "The Commission shall, when operations of motor carriers or brokers conducted or proposed to be conducted involve not more than three States, and the Commission may, in its discretion, when operations of motor carriers or brokers conducted or proposed to be conducted involve more than three States, refer to a joint board for appropriate proceedings thereon, any of the following matters arising in the administration of this chapter with respect to such operations as to which a hearing is required or in the judgment of the Commission is desirable: Applications for certificates, * * *." Section 205(b) prescribes that joint boards shall generally be composed of one member from each state involved.

■ Plaintiffs urge at the outset that the order of the Commission is void, since the § 207(a) application involved operations in "not more than three States," and hence

that reference for hearing before a joint board, rather than an examiner, was mandatory under § 205(a). But the original application of July 16, 1938, covered operations between Nashville and New York, well in excess of three states; and in the absence of direct evidence of fraud or deception, the Commission should not be obliged to go beyond the face of the application in determining whether or not reference to a joint board is mandatory. Any other rule would be the source of endless confusion and needless circuity of action. See West Coast Bus Lines, Ltd., Common Carrier Application, 32 M.C.C. 619, 621–622, approved as to this issue by the full Commission, 41 M.C.C. 269, 270, and thereafter by a statutory court in North Coast Transportation Co. v. United States, D.C.N.D.Cal., 54 F.Supp. 448, 450, 451.

■ Turning to the merits, objection is futile that the Commission erred in taking past operations into consideration in determining the present or future public convenience and necessity of the applicant's operations. The Commission has held, in persuasive opinions, that, where past operations have been conducted under color of "grandfather" rights, openly and without subterfuge, as was surely the case here, they are competent evidence on the issue of public convenience and necessity. D. A. Beard Truck Lines Co., Common Carrier Application—New Operation, 34 M.C.C. 395; Hoover Motor Express Co., Inc., Extension of Operations—Intermediate Points, 42 M.C.C. 315, 332; Fisher Common Carrier Application—New Operation, 42 M.C.C. 695, 696, 697; Trans-American Van Service, Inc., Common Carrier Application; No. MC-22254, decided January 22, 1944, 43 M.C.C. ——. And since the issue under this section is not as to "grandfather rights," but as to public demand or need, or how much the applicant's service is required and used by the public, it is not a bar to admissibility of such evidence that the past operations may have been conducted in violation of state law, as the operations from April to June, 1935, by the brothers Jacobs very likely were. Ibid. Certainly with this evidence the Commission's finding of public convenience and necessity was amply justified by the evidence; and the Commission, of course, with its expert judgment in this field, is the trier of facts. United States v. Pan-American Petroleum Corp., 304 U.S. 156, 158, 58 S.Ct. 771, 82 L.Ed. 1262;

Merchants' Warehouse Co. v. United States, 283 U.S. 501, 508, 51 S.Ct. 505, 75 L.Ed. 1227; Alton R. Co. v. United States, 315 U.S. 15, 23, 62 S.Ct. 432, 86 L.Ed. 586; United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 482, 62 S.Ct. 722, 86 L.Ed. 971. As the Commission stated in Dougherty Storage & Van Co. Common Carrier Application, 3 M.C.C. 427, 432, "Successful operation in the past creates a presumption that public convenience and necessity require a continuance of such operation." See also Black & White Express Contract Carrier Application, 6 M.C.C. 633, 634.

Although the Commission found that Associated was "fit, willing, and able properly to perform the service proposed," as required by § 207(a), there was no evidence regarding the matter in the record. Instead, the Commission supported its finding by reference to the recent thorough investigation of Associated which it had conducted during the 1942 control and consolidation proceeding. Associated Transport, Inc.—Control and Consolidation, supra. This was the identical procedure followed by the Commission in its earlier decision in Hoover Motor Express Co., Inc., Extension of Operations—Intermediate Points, supra, 42 M.C.C. at page 317. Plaintiffs here were parties to the consolidation proceeding; and the course followed was proper and expedient. We have lately upheld the power of a court to take judicial notice of its own records, Nahtel Corp. v. West Virginia Pulp & Paper Co.,

2 Cir., 141 F.2d 1; Goldstein v. Groesbeck, 2 Cir., 142 F.2d 422, citing National Fire Ins. Co. of Hartford v. Thompson, 281 U.S. 331, 50 S.Ct. 288, 74 L.Ed. 881, which collects the Supreme Court cases; and the Commission is an administrative body not limited by as strict rules of evidence as control the courts. Interstate Commerce Commission v. Louisville & N. R. Co., 227 U.S. 88, 93, 33 S.Ct. 185, 57 L.Ed. 431. Further, the intelligent functioning of the administrative process demands that the Commission be not required to indulge in lengthy evidentiary recapitulations of matters just decided in a companion case.

The case was submitted on a full record of all proceedings before the Commission and upon the stipulation of all parties that final judgment should be rendered. It follows from what we have said that the action must be dismissed on the merits with costs. Defendants have asked us to sign purely formal findings of fact. Since it is the Commission's duty, not ours, to find the facts, this seems at least superfluous, Public Service Commission of State of New York v. United States, D.C.S.D. N.Y., 56 F.Supp. 351; but to avoid all doubt, we state that we accept and adopt the Commission's findings of facts, approve its conclusions of law, and decide that its order was made as to matters within its jurisdiction and authority and with the support of substantial evidence, and that it is valid and lawful. A final decree to that effect is being filed with this opinion.