ALLARD EXPRESS, INC., Central Wisconsin Motor Transport Company, Clairmont Transfer Company, Gateway Transportation Company, Liberty Trucking Company, Neuendorf Transportation Company, Olson Transportation Company, and Robertson Transportation Company, Inc., Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

Steel Transportation Company, Inc., and J. Artim & Sons, Inc., Intervening Defendants.

Civ. A. No. C-65-134.

United States District Court
W. D. Wisconsin.

Nov. 5, 1966.

Adolph J. Bieberstein, Madison, Wis., for plaintiffs.

Edmund A. Nix, John E. Clarke, Raymond Zimmet, Attys., I. C. C., for defendants.

Claude J. Jasper, Madison, Wis., for intervening defendants.

Robert W. Loser, Indianapolis, Ind., for intervenor Steel Transp. Co., Inc.

Ferdinand Born, Indianapolis, Ind., for J. Artim & Sons, Inc.

Before DUFFY, Senior Circuit Judge, DOYLE and REYNOLDS, District Judges.

DUFFY, Senior Circuit Judge.

This is a suit brought to enjoin and set aside an order of the Interstate Commerce Commission, Division I (hereinafter referred to as Commission) served on March 10, 1965, in Docket MC–C–2800,[1] 98 M.C.C. 232, and also, to set aside an order of the Commission served July 12, 1965, denying plaintiffs' joint petition for reconsideration of the Commission's earlier report and order.

By the report and order here under consideration, the Commission granted a certificate of public convenience and necessity to Steel Transportation Company, hereinafter usually referred to as STC, to transport over irregular routes, iron and steel articles, from points in the Chicago, Illinois, commercial zone and from Chicago Heights, Illinois, to described points in Wisconsin, among other states.

In 1946, the Commission issued to STC a certificate of public convenience and necessity to transport over irregular routes, iron and steel articles "which because of their size, shape, or weight require specialized handling or rigging or the use of special equipment," from points in the Chicago, Illinois, commercial zone, and from Chicago Heights, Illinois, to described points in Wisconsin and other states.

In granting the foregoing authority, the Commission noted it had not specifically defined the term "special equipment" so 'that for the purposes of the certificate to STC, vehicles such as flatbed trailers which were especially designed for the transportation of iron and steel articles that were thirty feet or more in length, would be classified as "special equipment."

The Commission also noted in its report that there was need for STC's service in 1946 because motor carriers authorized to transport general commodities did not have vehicles, such as flatbed trailers, that could transport iron and steel articles which were thirty feet or more in length.

Thereafter, STC continuously transported specified iron and steel articles on flatbed trailers from the Chicago area to points authorized in Wisconsin, among other states.

In 1959, in a proceeding to which STC was not a party, the Commission decided that flatbed vehicles designed and used to transport iron and steel articles, should not be classified as "special equipment." W. J. Dillner Transfer Co.—Investigation of Operations, 79 M.C.C. 335. The Commission noted that to the extent that its earlier STC decision contained "implications to the contrary" the proper construction of the term "special equipment" should be as presently described.

In 1960, a number of motor carriers including most of the plaintiffs in this suit, filed a complaint with the Commission alleging STC was violating the terms of its certificate by transporting iron and steel articles which did not require specialized handling or the use of special equipment. By order of May 24, 1961, the Commission instituted an investigation into the practices of STC.

On July 25, 1961, although denying it was violating the terms of its certificate, STC filed a petition with the Commission to reopen, reconsider and clarify its existing certificate.

On the same date, STC also filed an application with the Commission for a certificate of public convenience and necessity to transport iron and steel articles from the Chicago area to the same destination points in Wisconsin as it already was authorized to serve. STC stated that this application was filed "out of an abundance of precaution" in the event that the Commission should decide that STC did not already have the authority to transport the involved iron and steel articles, and in the event the Commission decided not to clarify or modify its existing certificate. STC explained that it merely wanted to continue the

1. The report embraced four other proceedings: MC–C–3354; MC–79695 (Sub-No. 5); MC–79695 (Sub-No. 17) and MC–79695 (Sub-No. 21).

identical operations it had been performing for fifteen years.

The complaint proceeding, the investigation and STC's petitions were consolidated for hearing and decision, and were initially considered by two hearing examiners.

The Examiners concluded they were bound by the 1959 Commission decision in the *Dillner* case, and that under that decision, STC · was not authorized to transport iron and steel articles which were required to be moved on flatbed trailers since these trailers were not "special equipment."

The Examiners decided that the existing certificate should be modified because they believed that the Commission intended, in 1946, to authorize STC to transport the iron and steel articles which it had moved for almost twenty years.

The Examiners noted that the protesting carriers should not complain if a new certificate were issued to STC since STC had provided a needed service to the iron and steel industry since 1946 when many of the same protesting carriers made "little or no effort to meet the needs of shippers and receivers with vehicles suitable for their loading and unloading requirements."

Exceptions were filed to the Examiners' report and recommended order. STC filed exceptions only with regard to the Examiners' conclusion that it was operating unlawfully under its existing certificate.

The Commission decided by the report and order served March 10, 1965, that STC had operated unlawfully under its certificate, but that its operations had "not been conducted in willful defiance of the law" since they had been "performed openly without subterfuge under a misinterpretation of the true scope * * *" of STC's authority. 98 M.C.C. at 239.

The Commission held it could not modify STC's existing certificate. Instead, the Commission granted STC's application for a new certificate as had been suggested in the alternative by the Examiners. The Commission emphasized STC's past operations in performing a complete service in the transportation of iron and steel articles, and also that the shipping public had expressed a continued need for that service, particularly since there was an increasing demand for motor carrier service in the area involved.

The Commission issued the new certificate to STC on September 3, 1965. By order served July 25, 1966, the Commission approved the sale of STC's operating rights to J. Artim & Sons, Inc.

The various plaintiffs have been and are engaged in motor transportation to and from the Chicago commercial zone to various points in Wisconsin. Particularly in their northbound traffic, they have transported iron and steel and most, if not all, of the plaintiffs now operate, some flatbed trailers in hauling steel.

Plaintiffs contend that the Commission's findings are arbitrary and unsupported by substantial evidence, and therefore, that the certificate issued to STC should be declared void and revoked.

The question here for decision is whether the findings and conclusions of the Commission that the public convenience and necessity requires the issuance of a certificate to STC are supported by substantial evidence of record and the applicable law.

We consider first the guidelines for, the limitations on and the scope of judicial review of a report and order of the Interstate Commerce Commission where a certificate of convenience and necessity has been issued.

■ The courts have recognized that Congress has delegated to the Commission a broad discretion in determining what constitutes the public convenience and necessity under Section 207(a) of the Interstate Commerce Act, 49 U.S.C.A. § 307(a). The United States Supreme Court has said—"The purpose of Congress was to leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity. * * *

This, of course, gives administrative discretion to the Commission * * * to draw its conclusion from the infinite variety of circumstances which may occur in specific instances." Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 1493, 89 L.Ed. 2051 (1945) (rehearing den. 326 U.S. 803, 66 S.Ct. 8, 90 L.Ed. 489).

■ In Gateway Transportation Co. v. United States, 173 F.Supp. 822 (W.D. Wis.1959) this Court said at 828: "The extent of judicial review is limited as stated in Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 694, 78 L.Ed. 1260: 'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.'"

■ The United States Supreme Court has consistently held that orders of the Interstate Commerce Commission should not be set aside, modified or disturbed by a court on review, if they lie within the scope of the Commission's statutory authority, and are based upon adequate findings which are supported by substantial evidence upon the record as a whole, even though the court might have reached a different conclusion on the facts presented. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Mississippi Valley Barge Line Co. v. United States, supra.

The Commission noted that STC sought to continue an operation which it had performed since 1946, and that it desired to continue to serve the identical Wisconsin counties it had been authorized to serve since that time. STC did not propose any changes in territory.

Plaintiffs argue that the Commission has rewarded unlawful conduct, but there is no merit to this contention. All of the equities are on the side of STC. It was the Commission that changed the rules and this was done in a proceeding to which STC was not a party. What had been lawful suddenly became unlawful.

STC's operations for nearly twenty years were conducted overtly and without subterfuge. The hearing Examiners found they were conducted with the complete knowledge of the plaintiffs and with the knowledge of various responsible field representatives of the Commission.

STC offered evidence of continuous operations throughout the years since 1946. Numerous consignors and consignees of iron and steel articles testified they had used STC's service since 1946 at a time when general commodity carriers such as the plaintiffs did not have suitable equipment to haul their goods. The shippers noted that STC's service had been "excellent" and that there was a continued need for that service. They also anticipated a greater movement of iron and steel articles in the future.

Three-judge district courts often have held that the Commission can consider in a proper set of circumstances, the long continued and successful past operations of an applicant carrier in determining the present or future public convenience and necessity. R–C Motor Lines, Inc. v. United States, 241 F.Supp. 124, 126 (M. D.Fla.1965); Crichton v. United States, 56 F.Supp. 876, 879 (S.D.N.Y.1944), aff'd per curiam, 323 U.S. 684, 65 S.Ct. 559, 89 L.Ed. 554 (1945).

■ The petition to enjoin, set aside, and annul the order of the Interstate Commerce Commission, Division I, served on March 10, 1965, and also the order of the Interstate Commerce Commission served July 12, 1965, be and the same is hereby

Denied.