INTERSTATE COMMON CARRIER COUNCIL OF MARYLAND, Inc., et al. v. UNITED STATES et al.

No. 3959.

United States District Court D. Maryland. Civil Division.

April 13, 1949.

John R. Norris, James J. Doherty, Baltimore, Maryland (Baldwin, Jarman & Norris, Baltimore, Maryland, of counsel), for plaintiff.

H. L. Underwood, Gordon C. Locke, Washington, D. C. (Daniel W. Knowlton, Chief Counsel, Washington, D. C., of counsel), for Interstate Commerce Comm.

Wm. D. McFarlane, Sp. Asst. to Atty. Gen., Herbert A. Bergson, Asst. Atty. Gen., Bernard J. Flynn, U. S. Atty., Baltimore, Md., for United States.

Before SOPER, Circuit Judge, COLEMAN, Chief Judge, and CHESNUT, District Judge.

CHESNUT, District Judge.

The Interstate Commerce Commission granted a certificate of authority to Samuel Schreiber and Mrs. Harry Schreiber, proprietors of a common carrier motor transportation business, to operate an alternate route from Baltimore, Maryland, to Philadelphia, Pennsylvania, over U. S. Highway No. 1, for operating convenience only. The complaint in this case is brought to set aside the order of the Commission as invalid because not based on sufficient evidence to justify a finding that the grant of authority was required by public convenience and necessity.[1]

The Schreibers have been engaged in the trucking business for more than twelve years past. They operate a fleet of 225 vehicles which includes tractor-trailer units,

---

[1] The basic authority for the order of the Commission is to be found in 49 U.S.C.A. § 307. The statutory authority for the judicial review is found in 49 U.S.C.A. § 305(g) and 28 U.S.C.A. § 2323.

pick-up trucks and straight trucks and have about 200 full-time employees. Terminals are maintained at Pittsburgh, Chicago and Baltimore, Rochester, N. Y., and Washington, D. C. They are fit and able, financially and otherwise, to conduct their operations.

Prior to 1945 they held certificates of authority from the Commission for various motor routes from Chicago to or through Washington, Baltimore, Philadelphia and New York. One of these routes from Pittsburgh easterly to New York runs over U. S. Highway No. 22 from Pittsburgh through Armagh and Harrisburg, Pa., and Allentown to New York; another runs in a more southerly direction from Pittsburgh over U. S. Highway No. 30 through Breezewood, Chambersburg and York to Philadelphia, Pa., and from Philadelphia over U. S. Highway No. 1 to New York. From Breezewood, Pa., another route runs down into Maryland over U. S. Highway No. 40 to Hagerstown and Frederick dividing there with one route going to Washington and another to Baltimore. Prior to 1945 the Schreibers did not have any route authorized by the Commission from Baltimore to New York except by reversing the route from Baltimore to Breezewood, Pa., and there joining the route from Breezewood easterly through Chambersburg to Harrisburg or through York to Philadelphia. This was an impracticable route from Baltimore to New York by reason of the distance, 360 miles, as compared with 183 miles from Baltimore to New York via Philadelphia, or 245 miles via Harrisburg.

In 1945 on the application of the Schreibers for various changes and extensions or alternate routes the Commission by order dated March 19, 1945 granted authority to them for an additional route designated as route 4C, between Harrisburg, Pa., and Baltimore, Md., over U. S. Highway No. 111 for operating convenience only. It will be noted that this additional route from Baltimore to Harrisburg joined at the latter place the prior route for which the Schreibers did hold authority over U. S. Highway No. 22 from Pittsburgh through Harrisburg to New York.

In 1947 the Schreibers applied to the Commission for a further extension of cer- tain routes and for an alternate route between Baltimore, Md., and New York over alternate routes for operating convenience only. Extended evidence was submitted on behalf of the applicants and numerous protestants including various rail and motor carriers. An extended report was filed by the Examiners, to which both the applicants and some of the protestants filed exceptions. With respect to the alternate route from Baltimore to New York the Examiners reported unfavorably, but Division 5 of the Commission after hearing, on December 8, 1947, made a finding from the evidence that authority for the alternate route from Baltimore to Philadelphia over U.S. Highway No. 1 was required by public convenience and necessity. As the carrier already had an authorized route from Philadelphia to New York over U. S. Highway No. 1, it was unnecessary to duplicate that in the order. The Division submitted a very lengthy report including a summarization of the evidence for and against the application and ordered the certificate to issue. Thereupon the Interstate Common Carrier Council of Maryland, Inc., membership in which included a number of competing motor carriers, requested reconsideration of the order by the full Commission, but upon consideration of the record by the full Commission the petition for reconsideration was denied on March 1, 1948. On April 2, 1948 the Interstate Common Carrier Council filed its complaint in this case to set aside the order of the Commission. On February 15, 1949 the complaint was amended by the addition of two other complainants, the Baltimore Transfer Company and the Davidson Transfer and Storage Company, competitors of the Schreibers who, however, had not theretofore been protesting intervenors before the Commission.

After the filing of the complaint a three-judge court, as required by 28 U.S.C.A. §§ 2284 and 2325, was assembled, and counsel were heard. The case has been submitted for determination on the pleadings including the extended report of the Commission in the 1947 case, and also the report in the 1945 case, but without inclusion of any evidence before the Commission other than that summarized in the report.

In support of the complaint to set aside the order of the Commission it is contended that the evidence summarized by the Commission did not support the finding that the grant of the alternate route for operating convenience was required by public convenience and necessity. The heart of the Commission's conclusion will be found on sheet 13 of its report (last paragraph) reading as follows:

"Essentially, the fact to be determined is whether applicants are engaged in transporting a substantial amount of traffic between the termini of the proposed direct routes and effectively competing with other carriers for such traffic or whether the new route will enable them to institute a new service not now conducted, or a service so different from that now provided as to materially alter the competitive situation to the injury of existing carriers. In the former instance, following Dixie Ohio Exp. Co., Extension of Operations–Bristol, 30 M. C. C. 291, we are justified in granting the authority sought solely upon proof that the proposed operation would result in operating economies, but in the latter case, when the alleged alternate route amounts to the institution of a new service, we must insist upon the same measure of proof of public convenience and necessity as in any other extension application."

The Commission concluded that the case presented was in the former category and therefore required no further evidence of public convenience and necessity than proof of operating economies in actual transportation, which it was shown would amount to approximately $3700 a year. This conclusion of the Commission was based on two affirmative premises; (1) that for ten years past the Schreibers had in fact been transporting commodities as a common carrier between Baltimore and New York by way of York and Philadelphia, Pa., and (2) that, although this carrier route was unauthorized, nevertheless that fact was immaterial because the operations had been conducted in good faith on the mistaken advice of counsel, and the Schreibers did have by the 1945 order an authorized route between Baltimore and New York via Harrisburg and Allentown, although they had not in fact used it. The complainants attack

the latter premise as unsound and unfounded. They do not dispute the fact that the Schreibers had previously used the route from Baltimore to New York by way of York, but they say that the fact is immaterial because the Schreibers had never established any rights under the "grandfather clause" and had never received any authority from the Commission to use it. They also say that the conclusion of the Commission that the Schreibers had an authorized route from Baltimore to New York via Harrisburg is a plain misreading of what the Commission had ordered in the 1945 proceeding. They therefore contend that the present order of the Commission for the alternate shorter route from Baltimore to New York by way of Philadelphia constitutes really a *new service* not supported by any evidence of public convenience and necessity, and is therefore invalid, discriminatory and prejudicial to existing competitors. After careful study and consideration of the report of the Commission and an analysis of what was granted by the Commission in the 1945 proceeding, we are forced to conclude that this contention of the complainants is correct.

With respect to user of the route from Baltimore to Philadelphia and New York by way of York, Pa., the reports, both of the Examiner and of the Commission, determined that it was an unauthorized use. We take it to be clear that the carrier could acquire no prescriptive rights by virtue of an unauthorized use; and indeed the report of the Commission attributes significance to the fact of such user only in connection with its determination that the carrier had an authorized route from Baltimore to New York via Harrisburg. It follows that questions as to the correctness of this latter determination constitutes the crux of the case.

To understand the reasoning of the Commission in reaching the conclusion that the carrier had an authorized route from Baltimore to New York via Harrisburg, we must refer to a principle previously established by the Commission with respect to the combined use by a carrier of two separately authorized routes having a common junction point, as, for instance, in this case the authorized route of the carrier

from Pittsburgh to New York by way of Harrisburg, and the separate and independent route granted in 1945 from Baltimore to Harrisburg, for operating convenience; Harrisburg, of course, being the junction point of the two routes. The principle established by the Commission in such a situation was that the carrier could combine the two routes for transportation provided it had authority to use the junction point for *service* to shippers; that is to say, for the receipt or delivery of goods. In the case of Powell Bros. Truck Lines, Inc., 39 M.C.C. 11, the principle was stated in this way (p. 14):

"In the operating authorities of regular-route carriers, the services which such carriers may perform are described in part by a listing of the several routes over which they may transport shipments. A certificate authorizing operations over two or more routes that have one or more points in common which the carrier is authorized to serve confers the right to operate over all combinations of such routes and between all the designated points therein, unless the service is specifically restricted in such certificates."

And in the Commission's report in the instant case this principle was reaffirmed (sheet 8):

"Since the enunciation of the Powell doctrine, we have consistently adhered to the view that, in the absence of express authority to do so, joinder of connecting regular routes is only permissible in instances where the connecting point is a common point of service on both routes."

It is stated in the report of the Commission that Harrisburg, though a common point of junction for two separate routes, was not an authorized service point for the carrier. The same was true with respect to York, Pa., which was also a common junction point on two of the carriers' authorized routes, one from Pittsburgh to Philadelphia via Breezewood and Chambersburg, and the route granted from Baltimore to Harrisburg in 1945. Because York was not a service point the Commission properly held in its report that under the stated principle the carrier was not authorized to combine the Baltimore-Har-

risburg route with that from Pittsburgh to Philadelphia through York and thus form an authorized route to Philadelphia from Baltimore via York. But the Commission made a distinction with respect to Harrisburg as a common junction point on the following reasoning as expressed in its report (sheet 8):

"The situation with respect to joinder of routes at Harrisburg presents a somewhat different situation which merits, in our opinion, a modification of the Powell doctrine. As seen, operations have been authorized between Baltimore and Harrisburg (for operating convenience only), with no service to or from Harrisburg or intermediate points. If such an operating convenience route cannot be joined at its terminal points with connecting routes, it is difficult to envisage any other useful purpose that it could serve, inasmuch as service at points thereon, except Baltimore, is expressly prohibited. Manifestly, it was intended that this route between Baltimore and Harrisburg be joined and integrated with others which converge or pass through Harrisburg. Since the certificate contains no qualifications as to the manner in which, or the extent to which, joinder is permissible at Harrisburg, it follows that applicants may join the Baltimore-Harrisburg route to its presently authorized route extending between Harrisburg and New York City, via Allentown, Pa., and New Brunswick, N. J., subject to the condition that no service be rendered at Harrisburg or other intermediate points between Baltimore and Harrisburg. The record does not show the extent of applicants' use, if any, of the foregoing route via Harrisburg. This is quite understandable, however, since applicants were not familiar with the fact that the joinder of this route with other of their routes at Harrisburg is permissible."

The precise distinction made by the Commission between York and Harrisburg as a common junction point with other routes was thus stated (sheet 8):

"In this connection, it is to be noted that service is not authorized at either York or Harrisburg on any of the foregoing routes, and that the prime distinction between such points stems from the fact that York is an

*intermediate* point, whereas Harrisburg is a *terminal* point on this operating convenience route."

Thus it is seen that the particular point here is whether it is a permissible construction of the 1945 proceeding to treat Harrisburg as a terminal point or must it be treated merely as an intermediate point on the route from Baltimore to Harrisburg authorized by the 1945 proceeding for operating convenience only. Or, in other words, is the situation of Harrisburg as a common junction point of two routes so different from York that it legally justifies the order of the Commission under the circumstances of this case. To answer this question it is necessary to closely analyze the report of the Commission in the 1945 proceeding. The Commission's report in that case was docketed as No. MC-31444 (sub. No. 2). It was filed March 19, 1945 and directed not to be printed in full. However, the report has been made a part of the record before us in this case.

In that case the carrier holding certificates for authorized use of various routes filed an application for an extension of routes or for certain alternate routes, "between points and other regular and irregular routes as described in Appendix B hereto". One of the routes so requested (sheet 1 of App. B), between Pittsburgh and Philadelphia, Pa., was described as—"route 1A from Pittsburgh over U. S. Highway 30 to Breezewood, Pa.; thence over Pennsylvania Highway 126 to Wardfordsburg, Pa.; thence over U. S. Highway 522 to Hancock, Md.; thence over U. S. Highway 40 to Frederick, Md.; then over Maryland Highways 71 and 26 to Baltimore, Md., and thence over U. S. Highway 1 to Philadelphia"; also requested was route 1B between Pittsburgh and Philadelphia, which duplicated route 1A between Pittsburgh and Hancock, Md., and from Hancock traversed U. S. Highway 40 to State Road, Del., and U. S. Highway 13 to Philadelphia. Another route requested was (sheet 3, App. B) described as "route 4C— from Pittsburgh over U. S. Highway 22 to Harrisburg, Pa., and thence over U. S. Highway 111 to Baltimore. Return over same route".

With respect to routes 1A and 1B, the Commission said (sheet 6):

"A few shippers desire to use the proposed service between points in western Pennsylvania and points on the Baltimore-Philadelphia segments, as follows: Philadelphia, Wilmington, and Newark, Del., and Elkton and Aberdeen, Md. Philadelphia was served with numerous shipments in July 1940, but with only a few shipments in January, April, and October 1940, and since there is no evidence as to which, if any, of these shipments moved over the Baltimore-Philadelphia segments, we cannot find that a public need exists for the proposed use of these segments in serving Philadelphia. The only point between Baltimore and Philadelphia where such a need exists is Aberdeen, considering the shipper-testimony and the frequent service performed at this point in the representative months of 1940. Applicants will be authorized to serve Aberdeen as an off-route point since it is located within the 25-mile radius of Baltimore hereafter discussed under the caption 'Baltimore area'. We conclude that no service should be authorized over the Baltimore-Philadelphia segments of routes 1A and 1B, but only over the Pittsburgh-Baltimore segments as heretofore specified."

In the final order of the Commission in that case the applicants' request for permission to use the Baltimore-Philadelphia route was not authorized.

With respect to route 4C the Commission said (sheet 11):

"This route extends between Pittsburgh and Baltimore through Armagh, Hollidaysburg, Harrisburg, and York. It duplicates routes 2A and 2B between Pittsburgh and Harrisburg and thence, traverses a non-duplicate segment between Harrisburg, York and Baltimore.

"There is no shipper-testimony concerning any points on the non-duplicate segment, except Baltimore. Service will be authorized over route 4C between Pittsburgh and Baltimore for operating convenience as this route is reasonably direct between these two cities. The largest intermediate point on the non-duplicate segment is York, which was served only once

in the four representative months of 1940. Two intermediate points in Maryland also were served but they are located within a 25-mile radius of Baltimore and hence, will be considered hereafter in the discussion of the Baltimore area. We conclude that authority should be granted for the proposed operation over route 4C between Pittsburgh and Baltimore, with service at all intermediate points on the Pittsburgh-Armagh segment as heretofore authorized."

The routes and services which the Commission authorized in this 1945 proceeding (see sheet 17) were listed and described in the appendices E and D to the report. In Appendix D (sheet 3) there was listed as an authorized route "4C—between Harrisburg, Pa., and Baltimore, Md., over U. S. Highway 111 for operating convenience".

It is therefore quite clear that in this 1945 proceeding the Commission refused ·to grant the carriers' request for the Baltimore-Philadelphia route, and · the only additional route authorized relevant to the instant case was a route from Harrisburg to Baltimore and return over U. S. Highway 111, as a non-duplicate segment of a route from Pittsburgh to Baltimore. It seems to us legally impossible to construe this grant to authorize the carrier to use the Baltimore-Harrisburg segment of the Pittsburgh-Baltimore route as an authorized use of the route as a segment of a route from Baltimore to New York via Harrisburg and Philadelphia. The question seems to us to present only a point of law, that is, the construction of the wording of the authority granted by the Commission. We do not find the terms of the grant susceptible of the construction now put upon it by the Commission. The Commission's basis for not applying or rather in modifying the principle of the Powell case seems to us merely verbal and not substantial. It is said by the Commission that Harrisburg is a terminal point on route 4C, while York is only an intermediate point. It is literally true, of course, that Harrisburg terminates the non-duplicate segment of the Baltimore-Pittsburgh route from Baltimore to Harrisburg; but in relation to the subject matter involved it is in substance only an intermediate point on the route between Pittsburgh and Baltimore and return. And this view seems to us conclusive when it is remembered that prior to 1945 the carrier had no authorized route from Baltimore to New York (except via Breezewood, Pa., an impracticable route by reason of the distance), and in their 1945 proceeding the Commission found no basis for granting the extension requested from Baltimore to Philadelphia.

It will· be noted that in support of the distinction made the Commission also said that it was difficult to envisage any useful purpose that route 4C terminating at Harrisburg could have other than its intended joinder there with the carriers' route from Pittsburgh to New York. We are unable to agree in this view because it seems entirely clear to us that the only purpose of the grant of route 4C was to authorize a non-duplicate segment of an alternate route from Pittsburgh to Baltimore. This additional grant was clearly not made to create a new route and a new service between Baltimore and New York via Harrisburg.

We do not question the authority of the Commission to interpret its own prior orders where they are legally susceptible of the construction and application made. But in this case we do not find that the 1945 grant is susceptible of the construction put upon it by the Commission. Nor do we doubt the general authority of the Commission to authorize a carrier to combine for operations two separate routes which have a common junction point. See Century-Matthews Motor Freight, Inc., v. Thrun, 8 Cir., 173 F.2d 454. What we hold is that Harrisburg was not a junction point on two separate previously existing routes between Pittsburgh on the one hand and Baltimore on the other, to New York, because there was not in fact existing any separate route from Baltimore to New York.

Nor do we doubt that the Commission has full authority to grant an alternate route upon a showing merely of economies in operation without necessity of independent affirmative proof as to public convenience and necessity where the alternative route granted is a truly alternate route and not a new service. See Dixie Ohio Exp. Co.-Extension Operations. 30 M.C.C. 295; New

York Central Securities Corporation v. United States, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138; State of Texas v. United States, 292 U.S. 522, 54 S.Ct. 819, 78 L.Ed. 1402. However, in the instant case the order of the Commission for the authorized use of the Baltimore-Philadelphia route toward New York cannot be considered an alternate route for the Baltimore-Harrisburg-New York route which was, we find, non-existent. The evidence before the Commission is consistent only with the view that what is now permitted by the Commission's order is a newly authorized service.

■■ Although we have concluded that the order of the Commission cannot be sustained on the reasoning contained in its report, we have also considered whether the record contains other evidence which could be deemed sufficient to support the Commission's affirmative finding of public convenience and necessity which, of course, is a matter of fact to be determined by the Commission on the evidence. But in this case we do not find any evidence referred to in the report which could be so used. The report makes it entirely clear that the Commission based its finding of public necessity and convenience *only* on economies of time and money in operation of the shorter route from Baltimore to New York via Philadelphia as compared with that from Baltimore to New York via York or Harrisburg. While evidence of economies in operation is sufficient to justify a finding of public convenience and necessity with respect to an order of the Commission granting the right to use a shorter alternate route in lieu of an authorized longer one, such evidence alone is insufficient for an order granting a newly authorized route. The only evidence referred to in the Commission's report to support its finding of public convenience and necessity (in addition to the unsound conclusion with respect to the effect of Harrisburg as a junction point above considered) is the fact of the unauthorized user by the Schreibers of the route from Baltimore to New York via York, Penna. There is in this case no affirmative evidence by shippers or others of public convenience and necessity for the use by the Schreibers of the route from Baltimore to New York via

York or Harrisburg, Penna., or for the alternate shorter route from Baltimore via Philadelphia.

■ The Commission found on evidence that the motor carriers had used this unauthorized route in good faith, and therefore the unauthorized user did not of itself bar the carriers from the grant requested. As an abstract proposition we do not question the particular conclusion; but find it immaterial here. It appears that the Commission as well as the decisions of some three-judge courts have held that where there is affirmative evidence of public convenience and necessity by the testimony of shippers or otherwise, for a particular route applied for by a carrier, the fact of previous unauthorized use of the route does not debar the carrier from the grant on the equitable doctrine of unclean hands. And indeed the evidence of such use in good faith by the carrier may be considered by the Commission, in relation to affirmative evidence of public convenience and necessity, for its proper weight and bearing on the ultimate question of public convenience and necessity. But we know of no authority for the proposition that where there is no such affirmative evidence of public convenience and necessity, mere operating convenience, to result from the use of an alternate shorter route than that of the previously unauthorized route, is sufficient of itself for a finding of public convenience and necessity for the alternate route. See Inland Motor Freight v. United States, D.C. Wash.1945, 60 F.Supp. 520; Crichton v. United States, D.C.S.D.N.Y. 56 F.Supp. 876, affirmed without opinion 323 U.S. 684, 65 S.Ct. 559, 89 L.Ed. 554; A. B. & C. Motor Transp. Co. v. United States, D.C. Mass.1946, 69 F.Supp. 166; D. A. Beard Truck Lines Co. Common Carrier Application—New Operations, 34 M.C.C. 395; Hoover Motor Exp. Co. Inc., Extension of Operations Intermediate Points, 42 M.C.C. 315, 322; Fisher, Common Carrier Application—New Operations, 42 M.C.C. 695.

As the Commission has plainly stated that it was under no necessity to find any other evidence of public convenience and necessity than operating economies, and as we find in the report of the Commission no other such evidence, we conclude that the

finding of the Commission of the existence of public convenience and necessity in this case is not supported by evidence and must therefore be set aside.

There is, however, still another point to be considered. The defendants contend that the complainants had · no sufficient standing and capacity as parties in interest to maintain this suit; but we find the contention untenable. The applicable statutes are 49 U.S.C.A. § 305(g) and § 2323 of 28 U.S.C.A. the Revised Judicial Code effective September 1, 1948. Section 305(g) provides that—

"Any final order made under this chapter shall be subject to the same right of relief in a court *by any party in interest* as is now provided in respect to orders of the Commission made under chapter 1 of this title." (Italics supplied.)

Section 2323 of the New Judicial Code provides that—

" * * * any party or parties in interest to the proceeding before the Commission * * * may appear as parties of their own motion and as of right, and be represented by their counsel, in any action involving the validity of such order or requirement or any part thereof, and the interest of such party. Communities, associations, corporations, firms, and individuals interested in the controversy or question before the Commission, or in any action commenced under the aforesaid sections may ·intervene in said action at any time after commencement thereof."

The original complainant in this suit which was first filed on April 2, 1948, was the Interstate Common Carrier Council of ·Maryland, Inc. It is particularly urged by the defendants that it is not a party sufficiently in interest to maintain the suit because it is not itself a motor carrier but only a membership association representing ·numerous carriers, including the Baltimore Transfer Company and the · Davidson Transfer and Storage Company which were made parties complainant by the amended complaint filed February 14, 1949, after the effective date of the New Judicial Code. The last named parties did not personally intervene in the proceeding before the Commission because they and others in interest were represented by the Interstate Common Carrier Council.

With respect to the alleged incapacity of the Council the defendants rely largely on Merchant Truckmen's Bureau of New York v. United States, D.C., 16 F. Supp. 998, 999, where, in a somewhat similar case affecting the capacity of a membership corporation to maintain a suit to set aside an order of the Commission relating to the operation of a pick-up and delivery service by railroads, a three-judge court expressed doubt whether the association had the capacity to maintain the suit as a party in interest. That case was decided in 1936. But we think that the doubt there expressed under the earlier statute there involved has been sufficiently dispelled by what was said by the United States Supreme Court in Alton R. Co. v. United States, 315 U.S. 15, 18 and 19, 62 S.Ct. 432, 86 L.Ed. 586, the latter case dealing particularly with a complaint to set aside an order of the Commission under title 2 of the Transportation Act affecting motor carriers. As we read the latter case it seems to make it clear that a party in interest mentioned in § 305(g) is not necessarily a person or corporation which was a party to the proceeding before the Commission, but may be one who has a real stake in the transportation statute which the order of the Commission affects. Thus, even if the Interstate Council is to be regarded as disqualified, the other complainants have sufficient capacity to sue. And it may be added with respect to the Interstate Council, as pointed out in the brief for the complainants, that the Council has frequently appeared as a party both before the Commission and federal district courts and its right to so appear has been challenged only once. The Commission itself in the case of Harold H. Senger—Extension—M.C. 83744, Sub. 6, August 26, 1947, where its right to appear before the Commission was challenged, said:

"The Council has numerous motor common carrier members. It directed its attorney to appear in behalf of its member carriers as ·protestants in this proceeding. Many of the motor common carriers which are members of the Council ·operate in the ·territory sought in the instant ·application

and have a direct interest in the issues presented. They could have appeared individually to protect those interests. Here the Council has intervened to protect the rights of its member carriers. Applicant's objection to the participation of the Council was properly overruled. See Contract Carriers, Inc., Common Carrier Application, 41 M.C.C. 165."

For these reasons we conclude upon the record that so much of the order of the Commission as is here under consideration is invalid and is set aside, and the case is remanded to the Interstate Commerce Commission with instructions that the Commission shall take such further action, if any, as to it shall seem proper and in accord with this opinion.