**MICHIGAN MOTOR FREIGHT LINES, Inc.
et al. v. UNITED STATES et al.**

No. 11939.

United States District Court
E. D. Michigan, S. D.
June 30, 1953.

Axelrod, Goodman & Steiner, Chicago, Ill., Warner, Norcross & Judd, Grand Rapids, Mich., for plaintiffs.

William Hickey, Sp. Asst. to the Atty. Gen., Roger P. O'Connor, Asst. U. S. Atty., Detroit, Mich., Samuel Howell, Atty., Interstate Commerce Commission, Washington, D. C., for defendants.

Howell Ellis, Indianapolis, Ind., Sparkman D. Foster, Detroit, Mich., for Tarbet Trucking, Inc., intervening defendant.

Before SIMONS, Chief Circuit Judge, and PICARD and KOSCINSKI, District Judges.

KOSCINSKI, District Judge.

This action was filed under Title 28 U.S. C. Sections 1336 and 2321 through 2325, inclusive, to enjoin the Interstate Commerce Commission from issuing a certificate of public convenience and necessity to Tarbet Trucking, Inc., intervening defendant herein, pursuant to orders of the Commission dated September 13, 1951 and May 19, 1952, respectively, and to set aside such orders.

Tarbet Trucking, Inc. (hereinafter called Tarbet) is a common carrier of general commodities by motor vehicle in interstate commerce. Its east-west operation generally is between Chicago and Muncie and between Muncie (through Findlay) and Buffalo, while its north-south operation (also through Findlay) extends generally between Louisville and Detroit. Its head-

quarters are at Muncie, Indiana. Its authorized regular routes, insofar as pertinent to the issues in this case, are:

(1) Between Muncie, Indiana, and Buffalo, New York,

(2) Between Muncie and Detroit, Michigan,

(3) Between Muncie and Chicago, Illinois,

serving such intermediate points on these routes, insofar as pertinent here, as Toledo, Fremont, Fostoria, Cleveland, Lorain, Elyria, and Sandusky, Ohio, and Erie, Pennsylvania.

It does not possess any direct east-west routes which would join Chicago and Detroit, Chicago and Toledo, Chicago and Cleveland, Chicago and Buffalo, or which would join Detroit or Toledo with Cleveland or Buffalo.

It can operate between these points, therefore, only by a proper combination or joinder of the above-mentioned authorized routes. Its present operations from Chicago to Toledo, Detroit, Fremont, Cleveland, Erie, and Buffalo, and in a reverse direction, are over such combinations of routes, via Muncie, which is the terminal point and also the only point of service common to any two of the authorized routes, in combination. Between Detroit and Buffalo, and such intermediate points as Toledo, Cleveland, and Erie, and in a reverse direction, however, Tarbet combined only a portion of the Muncie-Detroit route up to Findlay with the segment of the Muncie-Buffalo route east of Findlay, and has used Findlay as a point of joinder on the two routes, without proceeding over the segment of each route which extends from Findlay to Muncie and which is duplicated on both routes. Tarbet has never been authorized to serve Findlay and, though it is a common point on the Muncie-Detroit and Muncie-Buffalo routes, it is not an authorized point of service.

With the primary purpose of securing more direct routes for its general east-west movement Tarbet filed an application with the Commission for authority to operate over proposed Routes (a), (b), and (d),

as. alternate routes for operating convenience only, described as:

Route (a)—Between Chicago, Illinois, and Fremont, Ohio, as follows: From Chicago over U. S. Highway 41 to the junction of U. S. Highway 6, thence over this highway to Fremont, Ohio,

Route (b)—Between Lorain, Ohio, and Cleveland, Ohio, over U. S. Highway 6,

Route (d)—Between Toledo, Ohio, and Sandusky, Ohio, over Highway 2,

and return over the same routes, serving no intermediate points not presently authorized.

The application also requested authority to operate over proposed Routes (c) and (e), as alternate routes, for operating convenience only, and also to serve Findlay, Ohio, as an intermediate point, admittedly a new service, but this portion of the application and action of the Commission thereon is not involved in the present suit.

Proposed Route (a) connects directly with Tarbet's present eastward routes and is intended by Tarbet for use with its present routes eastward to permit service at such points as Elyria, Erie, and Buffalo. Tarbet admits it seeks the grant of proposed Route (d) for handling Detroit-Toledo traffic to and from such points as Elyria, Cleveland, Erie, and Buffalo. Route (b) would not only give a somewhat shorter route, together with Route (d), from Detroit to Erie and Buffalo but was also intended to meet operating conditions which exist during certain times of the year. The distance from Chicago to Buffalo is 654 miles and from Chicago to Detroit 440 miles, over present routes; operations over proposed Route (a) would reduce the distance to Buffalo by 121 operating miles or by more than 18%, and to Detroit by 143 miles or 32.5%. Use of proposed Route (b) would result in only a slight saving of mileage, by comparison. The distance from Detroit to Buffalo, via Muncie, is 657 miles, and to the intermediate point of Cleveland it is 454 miles, and use of routes (b) and (d), if granted, would shorten the distance to Buffalo by 299 miles or over 45.5%, and to Cleveland by

287 miles or more than 63%. Tarbet computes proposed mileage savings between Detroit and Buffalo as slight on the basis of the short route, via Findlay, over which it has been actually operating, and submitted in evidence proposed savings in operating cost on the basis of such shorter route.

All of the plaintiffs are common carriers by motor vehicle engaged in transportation of property under authority of certificates issued by them by the Commission, conducting either direct or interline operations, among other points, between the following locations:

Chicago—Toledo and Cleveland,

Chicago—Detroit,

Chicago—Erie and Buffalo,

Detroit—Cleveland, and

Detroit—Buffalo.

Appearing as interveners in the proceedings on the application before the Commission, plaintiffs objected to the grant of proposed Routes (a), (b), and (d), which are the same routes over which some of the plaintiffs now operate and parallel to those of other plaintiffs.

After hearings were concluded the Examiner filed a written report in which he found that Tarbet failed to sustain its burden of establishing that operations over the proposed alternate routes are for operating convenience and not the establishment of a new service for which it failed to show a need, and that existing carriers operating over these routes, who collectively operate a substantial amount of equipment suitable for the proposed service, rendering a reasonably adequate service, should normally be accorded the right to transport all traffic which they can handle adequately, efficiently, and economically in the territory served by them, without the added competition of an additional carrier. He recommended denial of the application for failure of applicant to establish that the present or future public convenience and necessity require the proposed operation.

Division 5 of the Commission, which considered the matter after filing of exceptions by the applicant, issued a report in which it sets forth the nature and purpose of the application, the scope of operating rights of applicant and interveners, the claims and contentions of the parties involved, and the gist of shipper testimony, particularly as to tonnage transported via Tarbet and other carriers, the character of each service, and reasons for supporting the application. Estimated savings in mileage and operating expense are given with reference to all operations over the proposed routes except as between Detroit and Buffalo and intermediate points. The order states that the evidence of record was carefully reviewed, that adequate motor service now exists at Findlay and this portion of the application should be denied, and then sets forth the standard which the Commission applied to the portion of the application seeking alternate route authority, stated as follows:

"* * * the essential fact to be determined is whether applicant is now engaged in transporting a substantial volume of traffic between the termini of the proposed alternate routes and is effectively competing with other carriers for such traffic or whether the proposed routes would enable it to institute a new service not heretofore conducted or a service so different from that now provided as materially to improve its competitive position to the injury of existing carriers. We have in numerous cases followed the principle of permitting carriers effectively competing and operating between given points to use so-called alternate routes when such use would not create a new or different service."

The following findings, among others not relevant here, are then made:

"In our opinion the elimination of delays resulting in wasteful transportation, the economies in operation, the increased efficiency of the operation and the contribution to public safety which may be realized in this way are definitely in the public interest. As shown, applicant is now operating between the involved points hauling substantial tonnage and effectively competing with other existing carriers. It

it clear that the use of the proposed routes would not result in a new service or one that would unduly change the existing competitive situation. Granting the authority sought would not jeopardize or substantially effect the efficiency of existing services.

"We find that the present and future public convenience and necessity require operation by applicant * * * over the following routes:" (Routes a, b, c, d, and e are then described.)

An order was entered on September 13, 1951 denying the application except to the extent granted in the Report.

Interveners' petitions for reconsideration were denied by order of the full Commission, dated May 19, 1942, for the reason that the evidence adequately supports the findings of Division 5.

Plaintiffs predicate their claim for relief upon the following allegations in the complaint:

1. That the Commission's order is invalid because hearings on Tarbet's application were conducted before examiners of the Commission who were not appointed under the provisions of Sections 7 and 11 of the Administrative Procedure Act, 5 U. S.C.A. §§ 1006 and 1010.

(This issue was eliminated before hearings in this court. A motion to stay proceedings was previously granted, pending the outcome of the case of U. S. v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 73 S.Ct. 67, then before the Supreme Court of the United States, which involved the precise issue raised here. Upon a decision in that case adverse to plaintiffs' contention here, they amended their complaint by deletion of allegations pertaining to this issue.)

2. That although the Commission applied the proper principle or standard in this case governing grants of alternate routes for operating convenience only, it found unlawfully, arbitrarily, capriciously, contrary to, at variance and inconsistent with the evidence, that applicant hauled substantial tonnage and effectively competed with existing carriers, between the points involved, and that use of the pro-

posed routes would not result in a new service or one that would unduly change the existing competitive situation, and thus relieved Tarbet of the burden of proof to be carried by it, in accordance with the announced standard, to make a showing to that effect by competent evidence.

3. That the report of Division 5 and order of affirmance fail to specifically recite or state the amount of tonnage applicant was handling between any of the points involved and fail to show, by way of specific findings of fact and conclusions, that applicant is effectively competing with existing carriers between the involved points.

4. That the authority granted by said orders in fact establishes direct routes and new service between the points involved, without a finding by the Commission that present service by existing carriers over such routes is inadequate.

5. That the findings of the Commission that the present and future public convenience and necessity require the proposed operation is unlawful, arbitrary, capricious, contrary to, at variance and inconsistent with the evidence.

In its answer to the complaint the Commission states (Par. V): "Tarbet could neither operate between Detroit and Cleveland nor between Detriot and Buffalo except via Findlay, Ohio." Similar statements are found in its briefs submitted in advance of hearings. In view of these statements plaintiffs charge that the Commission committed a grievous error in construing Tarbet's present authority to permit use of Findlay, Ohio, as a point of joinder on its Muncie-Detroit and Muncie-Buffalo routes for transporting tonnage between Detroit and Buffalo and intermediate points, and, therefore, it based its orders upon a completely illegal and unlawful foundation. The Commission denies that it contends for a construction of Tarbet's present authority to permit such joinder; it points to the fact that it made no findings to that effect, that there is nothing in its report revealing in any way that the grant of the proposed routes is dependent upon such joinder, and it takes the position that such construction is not necessary in order to sustain the validity of its grant.

A three-judge court was convened as required by statute and the complete transcript of the proceedings before the Commission was submitted and reviewed.

■ The function of this court is that of a reviewing body, limited and restricted to ascertainment whether there is warrant in the law and facts for what the Commission has done. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law. U. S. v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821. On the other hand, responsibility for assuring that administrative bodies keep within reasonable grounds is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. Universal Camera v. N.L.R.B., 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456.

■■ As to functions of the Commission, the Interstate Commerce Act imposes upon it the responsibility of promoting safe, adequate, economic and efficient service. As a guardian of public interest in determining whether certificates of convenience and necessity shall be granted, it is entrusted with a wide range of discretionary authority. Not only is it the Commission's function to appraise the facts and draw inferences from them, but to bring to bear upon the problem of whether a certificate of public convenience and necessity should be issued an expert judgment and to determine from its analysis of the total situation on which side of the controversy the public interest lies. Lang Transp. Corp. v. U. S., D.C., 75 F.Supp. 915. Its findings and orders, however, must be consistent with and adequately supported by the evidence and will not be sustained when such evidence is only fragmentary. Smith's Transfer Corp. v. U. S., 9 F.C.C. 2358.

The action of the Commission and attack upon it by plaintiffs, on the grounds stated, must be appraised in the light of these respective functions.

■ Plaintiffs concede the propriety of granting use of shorter routes between presently authorized points solely on a showing that operating economies and safer or more efficient operation would result, in cases where applicant is transporting substantial tonnage and effectively competing and where such grant would not create a new service which would alter the existing competitive situation to the detriment of authorized carriers. They fully agree that the standard applicable to grants of alternate routes for operating convenience only is correctly stated and that the Commission did not err in stating that such standard is applicable to the facts before it. They maintain, however, that testimony offered on behalf of applicant fails to meet the standard because it fails to show that Tarbet was transporting substantial tonnage and effectively competing with other carriers between the pertinent points; consequently, a grant of authority to operate over the proposed routes, without the requisite showing, is, in effect, tantamount to a grant of new routes, without the requisite finding of necessity therefor since authority for new service can be justified only upon an affirmative showing of public convenience and necessity requiring the proposed service, as in any other application for new service, and cannot be sustained upon a mere showing of operating economies and of a safer or more efficient operation resulting from the proposed service.

We believe all parties to this proceeding will agree that from a procedural standpoint, at least, this is a request for alternate route authority for operating convenience only and was so considered. The application clearly so indicates, the applicant proceeded before the Commission on that theory and the Commission's orders themselves recite the purpose of the grant, as one authorizing use of "alternate routes for operating convenience only." We subscribe completely to the principles which plaintiffs claim should control in this

case. The orders of the Commission must stand or fall, depending upon proper application of such principles. If it is found that grant of any of the proposed routes is not a grant of an alternate route for operating convenience only but established a new service, the action of the Commission in such respect cannot be sustained. We need not, therefore, consider plaintiffs' objection, stated in Paragraph 4 herein under a discussion of the issues involved, as to failure of the Commission to find that present service by existing carriers between these points is inadequate. If the action of the Commission is not sustained, what the requirements are and whether they were met to authorize new service need not be decided. The Commission did, in fact, specifically find that the present service was reasonably adequate.

The most forceful objection is made to proposed Route (d) as an alternate route to presently authorized routes between Detroit and Buffalo.

Plaintiffs rely strongly on the decision in Interstate Common Carrier Council of Md. v. U. S., D.C., 84 F.Supp. 414, 418, in which the court cites the principle enunciated in the case of Powell Bros. Truck Lines, Inc., 39 M.C.C. 11, with reference to proper joinder of authorized routes, as follows:

"In the operating authorities of regular-route carriers, the services which such carriers may perform are described in part by a listing of the several routes over which they may transport shipments. A certificate authorizing operations over two or more routes that have one or more points in common which the carrier is authorized to serve confers the right to operate over all combinations of such routes and between all the designated points therein, unless the service is specifically restricted in such certificates."

The Commission's report in the principal case reaffirmed this standard in the following language:

"Since the enunciation of the Powell doctrine, we have consistently adhered to the view that, in the absence of express authority to do so, joinder of connecting regular routes is only permissible in instances where the connecting point is a common point of service on both routes."

The intervening defendant, Tarbet, contends that it operated over the shorter route between Detroit and Buffalo, through Findlay rather than through Muncie, prior to securing its authority as a common carrier under the "Grandfather Clause" of the Act and that rights acquired by it under that clause sanctioned use of all routes over which it then operated. Mere use, of such route, however, does not automatically confer authority to continue such use. Section 306, Title 49 U.S.C.A. prescribes procedures to be followed to secure the requisite certificate of convenience and necessity to continue operations over such route. There is nothing in the record in the present case to indicate that applicant holds authority from the Commission to operate over a route from Detroit to Buffalo. It can do so only by utilizing properly authorized routes, in this instance the Muncie-Detroit and Muncie-Buffalo routes. Under the Powell doctrine, it could lawfully operate between Detroit and Buffalo only by switching from one route to the other at an authorized point of service. The only authorized point of service common to both routes is Muncie. Any other operation would be unauthorized.

The Commission denies applicability of the Interstate Common Carrier Council decision, supra, to the facts in the present case. We believe that the factual situation in that case is analogous to the one present here.

In the case cited, applicants sought a direct route from Baltimore, Maryland, to Philadelphia, Pennsylvania, as an alternate route for operating convenience only, to connect at Philadelphia with its present route to New York. At that time, they operated between these two points by way of York, Pennsylvania, which was a common point but not an authorized point of service on two of its then authorized routes. The Commission conceded that

this was not an authorized point of joinder but authorized the alternate route on the theory that applicants could use the point of Harrisburg, which also was not an authorized point of service but was a terminal point on a previously authorized alternate route, for joinder and integration with other routes which converge or pass through Harrisburg. Harrisburg is located on the same route as York, but the route through that point is somewhat longer than through York.

The reviewing court rejected this interpretation of applicants' operating authority and held:

"It seems to us legally impossible to construe this grant to authorize the carrier to use the Baltimore-Harrisburg segment of the Pittsburgh-Baltimore route as an authorized use of the route as a segment of a route from Baltimore to New York via Harrisburg and Philadelphia.

"* * * Nor do we doubt the general authority of the Commission to authorize a carrier to combine for operations two separate routes which have a common junction point. * * What we hold is that Harrisburg was not a junction point on two separate previously existing routes between Pittsburgh on the one hand and Baltimore on the other, to New York, because there was not in fact existing any separate route from Baltimore to New York.

"Nor do we doubt that the Commission has full authority to grant an alternate route upon a showing merely of economies in operation without necessity of independent affirmative proof as to public convenience and necessity *where the alternative route granted is a truly alternate route and not a new service.* * * * However, in the instant case the order of the Commission for the authorized *use of the Baltimore-Philadelphia route toward New York cannot be considered an alternate route for the Baltimore-Harrisburg-New York route which was, we find, non-existent.* The evi-

dence before the Commission is consistent only with the view that what is now permitted by the Commission's order is a newly authorized service. (Emphasis supplied.)

"* * * the fact of previous unauthorized use of the route does not debar the carrier from the grant on the equitable doctrine of unclean hands. And indeed the evidence of such use in good faith by the carrier may be considered by the Commission, in relation to affirmative evidence of public convenience and necessity, for its proper weight and bearing on the ultimate question of public convenience and necessity. But we know of no authority for the proposition that where there is no such affirmative evidence of public convenience and necessity, mere operating convenience, to result from the use of an alternate shorter route than that of the previously unauthorized route, is sufficient of itself for a finding of public convenience and necessity for the alternate route."

In the Interstate Motor Freight System, infra, applicant could proceed between Baltimore and New York only by proceeding over an authorized route a considerable distance west to the nearest point of service common to presently authorized routes, which was Breezewood, Pennsylvania, and only then could switch to an eastward route again. In the present case the same situation exists; Tarbet could operate between Detroit and Buffalo but only by proceeding all the way south to Muncie, then back-tracking north to Findlay, before it could continue to Buffalo. Its authorized combination of routes between Detroit and Buffalo, because of great circuity, was, as in the cited case, so impractical as to be non-existent. The Commission has frequently considered highly circuitous, impractical and unfeasible routes, warranting denial of alternate routes. See Interstate Motor Freight System, Extension, MC-34628 (Sub. 135); Hayes Freight Lines, Inc., Extension, MC-42329 (Sub. 78); George M. Brown, Extension, MC-65491 (Sub. 2). In the case of Courier Express, Inc., Extension—Alternate Routes, MC-

820

50034 (Sub. 17) Division 5 expressed the view that the "greatly excessive circuity is highly persuasive in and of itself that applicant is not and could not be a substantial or effective competitor with the presently authorized carriers which operate over the direct route. The circuity of the authorized combination of routes between Detroit and Buffalo, and intermediate points, is particularly glaring where the proposed alternate routes reduce distances by as much as over 63% between some of the points. .

■ The only evidence in the record as to operations between Detroit and Buffalo were certificates of convenience and necessity showing authority given to Tarbet to operate between Muncie and Detroit and also to operate between Muncie and Buffalo; no testimony was submitted to show tonnage transported or competition with other carriers by operation over authorized routes, and none could be submitted since Tarbet admittedly never operated between Detroit and Buffalo via Muncie. Such testimony as was offered was based upon operations over an unauthorized route, via Findlay. We approve and adopt the reasoning of the court in the Interstate Motor Freight System, supra, that the proposed alternate route cannot be considered as an alternate route for the route presently in use because such route is unauthorized and non-existent; that mere operating convenience to result from the use of an alternate shorter route than that of a previously unauthorized route, is not sufficient of itself for a finding of public convenience and necessity for the alternate route, without affirmative evidence of public convenience and necessity; and that the evidence before the Commission with reference to grant to proposed Route (d) is consistent only with the view that permission to use such route granted by the orders is a newly authorized service. The finding of the Commission that grant of this route will not result in a new service is, therefore, contrary and inconsistent with the evidence submitted with reference to proposed Route (d) and the orders of the Commission granting authority to operate over such route cannot be sustained.

■ We are not confronted with the same situation with reference to proposed Route, (b). This route, though intended for use in connection with other proposed routes as an alternating route, is requested also to meet operating conditions which exist at certain times. It connects two points of service over presently authorized routes. Some saving in mileage and cost would be effected. Applicant has been operating over this route regularly for many years. Testimony that such operating conditions exist was submitted and was not refuted. The evidence of record warrants the Commission's conclusion that operating economies and safety of operation require this operation.

Proposed Routes (a) connects directly with applicant's present routes eastward to permit service to Buffalo and intermediate points, also at Bowling Green, Ohio, on the presently authorized Muncie-Detroit route. It is Tarbet's admitted intention to use such route on its Chicago-Toledo-Detroit runs and between Detroit and other western points on its system. Tarbet applied for and was granted authority, by said orders, to operate over proposed Route (a) "between Chicago, Illinois, and Fremont, Ohio, as follows: from Chicago over U. S. Highway 41 to junction U. S. Highway 6, thence over U. S. Highway 6 to Fremont." Since the order does not authorize a joinder of this proposed route with existing routes at the point of Bowling Green, Ohio, and we find nothing in the record that Tarbet has authority to serve that point, we do not construe the grant to operate over this proposed route as more than a grant of a shorter alternate route for existing routes between Muncie and Chicago and between Muncie and Buffalo, to facilitate operations between Chicago and Buffalo and intermediate points. As to Tarbet's operations on these two existing routes the record indicates that in May, 1950 applicant hauled from Chicago and Buffalo, and in a reverse direction, 296 shipments weighing 231,473 pounds and 10 truckloads of 230,533 pounds, a total of 462,026 pounds. May is representative of other months in 1950. Applicant submitted testimony relating to mileage savings and contemplated

reduction in costs of operation over this proposed route. It has moved traffic between these points for many years. No new points of service were sought or authorized.

Shippers who appeared on applicant's behalf testified to the character of Tarbet's and other motor carriers' services which they use and testified that the Tarbet service compared favorably with that of other carriers in point of time and expressed an intention to continue present relationships with all carriers through whom they transport tonnage. Applicant also intends to continue the same type of service but will realize substantial savings by operation over this shorter route.

Testimony offered by interveners, on the basis of applicant's invoices and delivery receipts, to show an unfavorable record as to time transit for movements of cargo by Tarbet, was considered of no probative value since these documents did not reflect actual time in transit. The Commission apparently believed, as it had a right to, applicant's testimony that invoices were often prepared far in advance of actual pick-ups. It may have appraised this testimony in the light of the shippers' testimony that the transit time of Tarbet's operations compared favorably with that of other carriers. Interveners also charge that the Commission did not consider testimony submitted by them to show that operations by some of the plaintiffs over this route equals several times the volume Tarbet hauls. The witness included in his computation, however, points of service beyond the area served by Tarbet.

■ We find sufficient warrant in the record for the Commission's findings that applicant hauled substantial tonnage and effectively competed with existing carriers between Chicago and Buffalo, as well as intermediate points on those routes, and that authority to use such route will not result in a new service between Chicago and Buffalo and intermediate points.

The validity of the orders is also assailed for failure to contain basic findings in support of the ultimate finding that the present and future public convenience and necessity require the proposed operation.

. The statute under which this proceeding was initiated, Title 49 U.S.C.A. § 307(a), provides:

"* * * a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied".

■ Affirmative findings, in the language of the statute, are found in the order of Division 5, together with other basic findings on which the Commission supports its ultimate finding of public convenience and necessity, as set out earlier in this opinion. The statute itself does not define the term "public convenience and necessity" nor does it specify the considerations by which the Commission is to be governed in determining whether public convenience and necessity require a proposed operation. Considering the requirement of the statute, the scope of the Commission's authority as heretofore outlined, and the findings made in its orders, we conclude that such orders meet statutory requirements.

It has been held that a lack of a complete statement of grounds for the Commission's determination, though always regrettable because it unnecessarily increases the labor of the reviewing court, is not so indispensable as to invalidate an order which fails to recite them. U. S. v. Baltimore & O. Railroad Co., 293 U.S. 454, 464, 55 S.Ct. 268, 79 L.Ed. 587. If the Commission's report contains all the essential findings required, each finding need not be annotated with the evidence supporting it. U. S. v. Pierce Auto Lines, 327 U.S. 515, 529, 66 S. Ct. 687, 90 L.Ed. 821.

The orders of the Commission, insofar as they grant authority to applicant to operate over proposed Route (d), are based

upon findings which are contrary to and inconsistent with the evidence and to that extent must be set aside; in all other respects such orders are adequately supported by substantial evidence.

The case is remanded to the Interstate Commerce Commission for such further proceedings, if any, as it deems proper and advisable, consistent with this opinion.