ELMER BLOCK ET AL., APPELLANTS, V. LINCOLN TELEPHONE & TELEGRAPH COMPANY, A CORPORATION, ET AL., APPELLEES.

103 N. W. 2d 312

Filed June 3, 1960. No. 34722.

*Muffly & Snyder,* for appellants.

*J. Taylor Greer, Allen L. Overcash, Woods, Aitken & Aitken,* and *Marti, O'Gara, Dalton & Sheldon,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action or proceeding which was commenced by Elmer Block, Merle Wilhelm, and Roca Elevator Company, complainants, by the filing of a complaint with the State Railway Commission against Lincoln Telephone and Telegraph Company, a corporation, Capitol Telephone Company, a corporation, and Martell Telephone Company, a corporation, defendants. Hereinafter Elmer Block will be referred to as Block, Merle Wilhelm as Wilhelm, Roca Elevator Company as Roca, Lincoln Telephone and Telegraph Company as L. T. & T., Capitol Telephone Company as Capitol, and Martell Telephone Company as Martell.

To the extent necessary to point out here, it is set forth in the complaint that Block and Wilhelm are farmers living in Lancaster County, Nebraska; that Block had been a subscriber for telephone service from L. T. & T. at his farm location since 1944; that Wilhelm had been a subscriber at his farm location since 1917; that Block was the president and managing officer of Roca; that Roca had been a subscriber for telephone service from Martell since 1923; that on or about August 14,

1958, L. T. & T. advised Block and Wilhelm that it would not furnish them telephone service after December 1, 1958; that the stated reason for this was that their locations were in territory which had been granted to Capitol; and that on or about September 4, 1958, Martell advised Roca that it would not be able to serve it with telephone service after December 1, 1958, for the reason that Roca was within the territory of L. T. & T.

So that confusion may be avoided it is stated here that Capitol is the real party defendant in interest with L. T. & T. It is successor to the rights of Martell under approval of the commission.

The complainants allege that they are entitled to retain and be furnished the service which had been supplied prior to December 1, 1958, on the basis of convenience and necessity, and on account of failure of notice to them of change of territory of L. T. & T. and Capitol.

The prayer of the complaint was for a hearing, an investigation, and a mandate of the commission requiring the continuance of the preexisting telephone service.

By answer Capitol and Martell admitted the alleged notices of discontinuance of service had been given by Martell and L. T. & T. It is alleged that in 1944 the telephone service furnished to Block at his farm location was in territory served by Martell; that L. T. & T. and Capitol, in the spring of 1958, agreed that this was in Capitol territory; that the commission so established these territories by its order on June 18, 1958; that the status of the service to Wilhelm was the same as that of Block; and that this order excluded Roca from the Capitol territory. In this connection it is alleged that this order of the commission involved no change in the territory which had theretofore been occupied by L. T. & T. and Capitol.

L. T. & T. filed an answer by which it admitted the notice of Martell to Roca, and also the notice to Block and Wilhelm that it would not be able to serve them after December 1, 1958. By the answers the status of

the defendants as common carriers declared in the complaint is admitted. By prayers of the answers the commission was asked to dismiss the complaint.

A hearing was had on the complaint, after which the commission made findings and entered an order by which, among other things, it dismissed the complaint. The other matters are not within the purview of the issues presented by the pleadings or the record of the hearing. The order contains an exaction that L. T. & T. forthwith discontinue furnishing telephone service to Block and Wilhelm at their residences, and that Capitol forthwith discontinue telephone service to Roca. No request for such action was presented to the commission by this or any other formal proceeding.

The questions presented by the briefs are numerous, but the primary question which was presented to the commission and to this court on appeal is that of whether or not under the Constitution and statutes of Nebraska, L. T. & T. had the right, under the circumstances, to withdraw and refuse telephone service to Block and Wilhelm, and whether or not Capitol had the right to withdraw and refuse telephone service to Roca.

The State Railway Commission was created and its powers declared by Article IV, section 20, of the Constitution of Nebraska. The powers therein declared are the following: "The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision."

Within the meaning of the Constitution telephone companies are common carriers. Farmers & Merchants Telephone Co. v. Orleans Community Club, 116 Neb. 633, 218 N. W. 583. In this case appears the following: "Telephone companies operating in this state are subject to all reasonable orders of the state railway commission, entered upon hearings duly and legally had, as to rates

to be charged, and time and manner of service to be rendered; and such orders will not be disturbed unless clearly wrong."

A matter of significance is that it is pointed out in that opinion, which was rendered in 1928, that the validity of the orders of the commission depend upon hearings duly and legally had.

The question of whether or not these companies had the right of withdrawal must depend, at least to some degree, upon their status in 1958 and prior thereto, which necessarily includes the manner of acquisition of status, if that may be ascertained.

It may be stated with certainty that the record presented to this court fails to disclose authentically that prior to 1958 any action or attempt at action was taken by the commission to declare or define the territory of Martell or its successor, Capitol. There is testimony that in 1958 there was a grant of a certificate of convenience and necessity, which was a part of an order confirming a transfer of Martell to Capitol. The record in this case, however, does not contain that order. The record fails to disclose that the commission, until the hearing herein, ever attempted officially to make any declaration as to the territory or boundary of L. T. & T. at any time prior to the action taken in the proceeding from which the appeal herein was taken.

Attention has not been called to any constitutional or statutory provision requiring such action by the commission. This is not to say, however, that the commission lacked or lacks the power to so act.

How the area of operation and service of Martell, to which Capitol has succeeded, and that of L. T. & T. were originally established, and when, is not disclosed. The dividing line between the two, according to the evidence of witnesses, was established by agreement between Martell and L. T. & T. The time when this was done does not clearly appear, but the reasonable inference is that this was at least as early as 1944. It appears

that in that year Martell and L. T. & T. agreed that Roca was in the L. T. & T. area but was receiving Martell service, and that Block and Wilhelm were in the Martell area but were receiving L. T. & T. service. This agreement appears to have been renewed in 1958. This agreement was called to the attention of the commission but no formal action was taken then or thereafter until 1958 after Martell and L. T. & T. served the notices of discontinuance of service which have been described herein. These notices were not of hearing to be had before the commission on application for leave to discontinue service, but of peremptory refusal by Martell and L. T. & T. to continue service after a named date.

It should be pointed out that Block and Wilhelm do not contend that the service they were receiving, which provides the basis for this action, was not from L. T. & T. in the Capitol area, and Roca does not contend that the service it was receiving was not from Capitol in the L. T. & T. area.

These are the circumstances which must be considered in making a determination as to whether or not the peremptory withdrawal of the preexisting service was proper.

Attention has not been called to any statute, and none has been found, which prior to 1951 prevented one telephone company from invading the territory of another and rendering service therein. Likewise the record in this case does not direct attention to evidence of any such established rule or order of the commission. It is true that in the briefs attention is called to a purported order of the commission made in 1934 as follows: "That no telephone company operating in the State of Nebraska as a common carrier shall after June 1, 1934, construct a new telephone line or extend an existing telephone line into the territory of another company operating as a common carrier without first making application for and receiving from the Nebraska State Railway Commission a certificate of convenience and

necessity." Attention has not, however, been called to it by the record made in this case.

In 1951, section 86-213, R. R. S. 1943, was enacted which contained the following: "No person, firm, partnership, corporation, cooperative, or association shall offer telephone service or shall construct a new telephone line in or extend an existing telephone line into the territory of another telephone company without first making an application for and receiving from the State Railway Commission a certificate of convenience and necessity, after due notice and hearing under the rules and regulations of the commission."

As an observation, in the light of general knowledge as to the use of telephones, it appears proper to say that the term convenience and necessity ordinarily connotes the telephone company, those it serves, and those seeking service.

Also attention has not been called to any statute requiring withdrawal in case of invasion by one of the territory of another, or defining rights of the companies or of subscribers in the case of attempted voluntary withdrawal.

On the record presented here it may not be said that the attempted withdrawals of service were made pursuant to constitutional or statutory plan or requirement, or by exaction of an order of the commission, but by each company on a voluntary and ex parte basis.

The interpretation of the views of the appellees as expressed in their briefs does not however conform to this conclusion. They appear to insist that the order of the commission establishing Capitol as the successor to Martell and declaring the issuance of a certificate of convenience and necessity in 1958 amounted to an order requiring L. T. & T. to withdraw service from Block and Wilhelm and requiring Capitol to withdraw service from Roca. This insistence may not be sustained.

As already pointed out, that order has not been brought to this court by the record. Even if it had, and assum-

ing that it contains what is contended for it, it would avail L. T. & T. and Capitol nothing. Reasons for this are that L. T. & T., Roca, Block, and Wilhelm were not parties to that proceeding; no reference was made to the service involved; no attempt was made to define or declare a line between L. T. & T. and Capitol; nothing was taken from L. T. & T. and given to Capitol and nothing taken from Capitol and given to L. T. & T.; and nothing was therein contained which purported to affect in any way L. T. & T. or Block and Wilhelm.

The basic question therefore is that of whether or not L. T. & T. and Capitol, without proper notice and hearing, had the right to withdraw the service which they had been furnishing as common carriers to these, their subscribers.

In final analysis the answer under the record presented depends upon the question of whether or not, where the relationship of telephone carrier and subscriber has become established, that relationship may be destroyed or discontinued contrary to the wish of the subscriber without permission duly granted, after notice and hearing, by the commission. As has been pointed out, the commission is clothed with the constitutional right and duty to regulate service, and this duty, this court has said, is to be exercised by the entry of orders on hearings duly and legally had.

It is of course true that the subscriber is a necessary party in interest in the matter of telephone service. There is nothing in the constitutional provision relating to regulation of service which limits the regulatory power and duty of the commission to the supplier of the service. In reason therefore it would appear that a subscriber should be entitled to a hearing on the matter of deprivation of existing service as well as upon an application to require a telephone company to extend service to him.

In Interstate Common Carrier Council v. United States, 84 F. Supp. 414, the following from section 2323

of the New Judicial Code (28 U. S. C. A., § 2323, p. 133) was quoted: " "* * * any party or parties in interest to the proceeding before the Commission * * * may appear as parties of their own motion and as of right, and be represented by their counsel, in any action involving the validity of such order or requirement or any part thereof, and the interest of such party. Communities, associations, corporations, firms, and individuals interested in the controversy or question before the Commission, or in any action commenced under the aforesaid sections may intervene in said action at any time after commencement thereof.' " This was affirmed by the United States Supreme Court in 338 U. S. 843, 70 S. Ct. 91, 94 L. Ed. 516.

In Crichton v. United States, 56 F. Supp. 876, affirmed in 323 U. S. 684, 65 S. Ct. 559, 89 L. Ed. 554, it was said: "Turning to the merits, objection is futile that the Commission erred in taking past operations into consideration in determining the present or future public convenience and necessity of the applicant's operations."

These cases are not telephone service cases. They do however relate to common carriers and their duties with reference to the exactions in relation to the organizations and individuals served. They make clear that individuals as well as organizations are entitled to be heard and that past operations and future needs are proper subjects of hearing.

Any other attitude would, as may readily be seen, furnish the opportunity for grave and incalculable injustice. This is true since otherwise no opportunity would be afforded for the production of evidence necessary to be considered in determining the matter of true convenience and necessity. It would permit action without the right to present the facts essential to a proper determination of basic questions involved. In short it would be a denial of due process of law. The rule is well stated in 73 C. J. S., Public Administrative Bodies and Procedure, § 142, p. 472, as follows: "An admin-

istrative agency may not act unreasonably or capricious-
ly, and its judgment must be based on a factual founda-
tion, and the agency or officer must give due consider-
ation to all the essential elements involved; and if ma-
terial elements have not been given due consideration
the decision is void."

A proper and sufficient hearing is characterized in
73 C. J. S., Public Administrative Bodies and Procedure,
§ 132, p. 456, as follows:  "An administrative hearing,
particularly where the proceedings are judicial or quasi-
judicial, must be fair, or as it is frequently stated, full
and fair, fair and adequate, or fair and open.  The right to
a full hearing includes a reasonable opportunity to know
the claims of the opposing party and to meet them.  In
order that an administrative hearing be fair, there must
be adequate notice of the issues, and the issues must
be clearly defined."

The conclusion to be drawn from what has been said
is that an order of the commission withdrawing exist-
ing service from a subscriber which is made without
notice and hearing is void.  In the light of this, does a
carrier have the right, as was done in this instance,
without resort to the commission, to withdraw ex-
isting service?  The answer must be in the negative.
It could not reasonably be urged that a carrier could
evade the control and supervision over it imposed by
the Constitution or statute.

In this view it must be said that inasmuch as there
has never been a proceeding the purpose of which was
to take away the service of Block, Wilhelm, and Roca,
the order in this case so taking it away was erroneous
and void.  The commission under its supervisory power
and jurisdiction of course had the power to order restora-
tion of the service which was withdrawn, and there
having been nothing to justify a refusal to do so the
dismissal of the complaint was erroneous.

There is no purpose to say by this opinion that the
commission shall not, in the future, have the right, on

a sufficient application with due notice and a proper hearing, to determine on the basis of convenience and necessity, the question of continuance or discontinuance of the service which is involved in this action.

The judgment of the commission is reversed.

REVERSED.